Robert EHRENBERG, Plaintiff–
Appellant,

v.

G. GOORD, Commissioner of Correc-
tions; F. Bennett, Superintendent of
Elmira Correctional Facility; R.
Guzman, Deputy Superintendent of
Programs of Elmira Correctional Fa-
cility; L. Pocobello, Deputy Superin-
tendent of Industry of Elmira Correc-
tional Facility, individually and in
their official capacities, Defendant–
Appellee.

Docket No. 00–0158.

United States Court of Appeals,
Second Circuit.

March 30, 2001.

Robert Ehrenberg, Comstock, NY, pro se.

Edward Lindner for Eliot Spitzer, Attorney General for the State of New York, Albany, NY; Daniel Smirlock and Peter H. Schiff, on the brief, for appellees.

Present GRAAFEILAND, CALABRESI, and SOTOMAYOR, Circuit Judges.

*SUMMARY ORDER*

UPON DUE CONSIDERATION, it is ORDERED, ADJUDGED, AND DECREED that the judgment of the district court be and it hereby is AFFIRMED.

## I. BACKGROUND

In 1986, a class of inmates at New York State's Elmira Correction Facility ("the Elmira facility") filed a class action against prison officials alleging "widespread discrimination at the facility on the basis of race in violation of the Fourteenth Amendment of the Constitution and 42 U.S.C. §§ 1981 and 1983." *Santiago v. Miles*, 774 F.Supp. 775, 777 (W.D.N.Y.1991). The case went to trial, and on October 1, 1991, the United States District Court for the Western District of New York (Larimer, C.J.) found that black and Hispanic inmates at the Elmira facility had been "systematically subjected . . . to discrimination on the basis of race in the areas of housing and job assignment and in the imposition of discipline." *Id.* at 801. The district court directed the parties to work together to create a plan to correct this state of affairs and to propose the terms of a remedial injunction to be issued by the court. On April 13, 1993, the court adopted a plan, previously agreed to by the parties, under which (among other things) inmate jobs at the Elmira facility must be assigned in such a way that (within a ten percent margin of error) the percentage of black and Hispanic inmates in certain "preferred" jobs does not fall below the percentage of blacks and Hispanics in Elmira's prison population.

The lawsuit now before us arises out of the application of the remedial regime to former Elmira inmate Robert Ehrenberg ("plaintiff"). Plaintiff, who is white, asserts that seventeen non-white inmates obtained preferred jobs at the Elmira facility's print shop ahead of him[1] even though they applied for the positions and completed the requisite training after him or (in some cases) never completed the requisite training at all.

Plaintiff initially filed a series of administrative grievances and appeals objecting to this allocation of jobs. These complaints culminated in a May 22, 1996 decision by the New York State Department of Correctional Services Central Office Review Committee sustaining a prior ruling by the Elmira Facility's Inmate Grievance Resolution Committee Superintendent to the effect that "Per Court Order of *Santiago v. Miles* ethnic balance shall be maintained in peferred [sic] assignments. Print indistry [sic] is a preferred work assignment. There *SHALL NOT BE* any deviations from the established Court Order." Plaintiff thereupon brought an Article 78 proceeding in New York State Supreme Court. That court dismissed plaintiff's petition on the grounds (a) that the actions of the prison

---

1. Plaintiff never got such a job.

officials were in compliance with the procedures mandated by the *Santiago* injunction, and (b) that the Article 78 proceeding was not a proper forum for any challenges plaintiff raised to the *constitutionality* of the *Santiago* injunction.

Finally, on July 8, 1996, plaintiff filed the federal lawsuit currently before us. Pursuant to 42 U.S.C. § 1983, he sued a variety of prison officials ("defendants") in both their individual and official capacities, claiming that they had deprived him of his rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiff sought (a) declaratory relief to the effect that defendants' conduct in assigning jobs in the Elmira facility's print shop violated equal protection, (b) an injunction prohibiting defendants from continuing to assign prison jobs as they had been doing under the *Santiago* remedial order, and (c) $1022.11 in damages, reflecting the wages plaintiff claims he had lost as a result of not being employed in the Elmira facility's print shop. In addition, plaintiff sought permission to file the lawsuit as a class action and to proceed *in forma pauperis.* He also applied to the court for appointment of counsel pursuant to 28 U.S.C. § 1915(e).

The district court addressed plaintiff's claims in three stages. First, on November 18, 1997, the court granted plaintiff permission to proceed *in forma pauperis* but at the same time acted *sua sponte,* pursuant to 28 U.S.C. § 1915(e)(2)(B), to dismiss several of plaintiff's claims on the ground that they were based on indisputably meritless legal theories. *See Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, the district court dismissed all plaintiff's claims against defendant Goord, who is the

New York State Commissioner of Corrections, since plaintiff had failed to allege that defendant Goord had any personal involvement in the disputed actions. *See Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997). In addition, the district court dismissed all plaintiff's claims against defendants in their official capacities; these claims, the court held, were barred by the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). And lastly, the court below rejected plaintiff's request to prosecute his case as a class action on the ground that, by the time of the order, plaintiff had been transferred from the Elmira facility to the Green Haven Correctional Facility.[2] According to the court, this meant that he was no longer an adequate representative of the class of Elmira facility inmates on whose behalf he sought to bring suit. *See* Fed.R.Civ.P. 23(a) (in order for a case to proceed as a class action, there must be "questions of law or fact in common to the class" and "the claims ... of the representative parties [must be] typical of the claims ... of the class").

Second, on January 30, 1998, the district court denied plaintiff's request that counsel be appointed to represent him in this lawsuit. In doing so, the district court concluded that the appointment of counsel "would [not] offer substantial assistance in developing plaintiff's arguments, or otherwise serve the interests of justice." *See generally, Cooper v. A. Sargenti Co.,* 877 F.2d 170, 174 (2d Cir.1989) (per curiam).

Finally, on March 31, 2000, the district court, pursuant to Fed.R.Civ.P. 12(c), granted defendants' motion for judgment on the pleadings with respect to plaintiff's remaining constitutional claims. The dis-

---

**2.** Plaintiff had also received a Tier III misbehavior report in April 1996, which made

plaintiff ineligible for participation in the print shop program until April 1997.

trict court stated that the race-based remedy imposed in *Santiago* was narrowly tailored to the compelling state interest of ending judicially recognized race discrimination at the Elmira facility, and that it therefore was constitutional, both on its face and as applied to plaintiff. *See generally, United States v. Secretary of HUD*, 239 F.3d 211 (2d Cir.2001). The district court concluded that there was no set of facts on which plaintiff could prevail, and hence that defendants were entitled to judgment as a matter of law on all of plaintiff's remaining claims. The district court's March 31 order also (a) expressly denied plaintiff's request to amend his complaint to add several new defendants to the action, and (b) denied, *sub silentio*, plaintiff's request to amend his complaint to add a claim that, regardless of the constitutionality of the *Santiago* remedial decree, defendants' had placed other white inmates in the print shop ahead of him *in violation* of the terms of *Santiago*.

Plaintiff appeals, re-asserting his request for declaratory and injunctive relief as well as money damages. In particular, plaintiff argues that the district court committed reversible error in refusing to have counsel assigned to his case and in rejecting his claim that defendants' actions denying him a job in the print shop pursuant to *Santiago's* race conscious remedial order violated his right to equal protection. Moreover, plaintiff's appellate brief, con-

strued generously, can be read also to reassert his allegation that defendants improperly placed some white inmates in the print shop ahead of him *in violation* of the terms of the Santiago order, and in that respect to attack the district court's denial of his request to amend his complaint.

## II.  DISCUSSION

■ Several of the claims raised by plaintiff's appeal involve no legal substance and may be rejected without discussion. Accordingly, and for substantially the reasons given by the district court, we affirm the district court's dismissal of plaintiff's suit against defendant Goord and against the other defendants in their official capacities. In addition, plaintiff's request for injunctive relief is rendered moot by his transfer out of the Elmira facility.[3] We therefore affirm the district court's dismissal of his claim for injunctive relief against all defendants.[4]

Plaintiff's only remaining claims are (a) that he suffered money damages because, under the *Santiago* decree, less qualified non-white applicants were given places ahead of him in the Elmira facility's print shop; (b) that he suffered money damages because less qualified *white* applicants were given places ahead of him in the Elmira facility's print shop in *violation* of the procedures established by the *Santia-*

3.  While we recognize that an exception to the doctrine of mootness has been drawn for claims that are "capable of repetition, yet evading review," we do not think that exception applies in the case at bar. Plaintiff has presented no evidence that defendants' action under the open-ended *Santiago* order is "in its duration too short to be fully litigated prior to cessation or expiration" or that, in spite of his transfer out of the Elmira facility, there is "a reasonable expectation that the same complaining party [will] be subject to the same action again." *In Re Kurtzman*, 194 F.3d 54, 58–59 (2d Cir.1999) (per curiam) (quotation

marks and citation omitted) (alteration in original). Both these conditions must be met before the exception to the doctrine of mootness applies.

4.  In affirming the judgment of the district court in this respect, we need not confine our analysis to the district court's opinion, but may instead affirm its dismissal of plaintiff's claim on any ground supported by the record. *See Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir.1997).

*go* decree;[5] and (c) that he was wrongly denied an attorney in this case.

## A.

■ Insofar as defendants were merely implementing the terms of the remedial decree issued by the federal district court in *Santiago*, they are protected by qualified immunity against plaintiff's action for damages.[6] Government officials enjoy qualified immunity if "it was 'objectively reasonable' to believe that [their] acts did not violate ... clearly established rights." *Genas v. State of New York Dep't of Corr. Servs.*, 75 F.3d 825, 830 (2d Cir.1996) (quotation marks and citation omitted) (alteration in original). And it is objectively reasonable for a government official to conclude that actions ordered by a federal court following a constitutional adjudication do not violate clearly established rights.[7]

## B.

■ We are left only with plaintiff's request (which the district court denied) that he be permitted to amend his complaint to add the claim that other white inmates were placed in the print shop ahead of him in violation of the *Santiago* decree. Plaintiff, however, presented this very argument to the State court that adjudicated his Article 78 proceeding. That court expressly held that there was no evidence "that any white inmate, who was below petitioner on the waiting list, was assigned to the print shop ahead of the petitioner" and that "petitioner has not demonstrated that respondents failed to comply with the established placement procedures" under the *Santiago* decree. Accordingly, plaintiff is collaterally estopped from arguing that defendants' actions violated the terms of the *Santiago* decree.[8] Under the cir-

---

**5.** Both of these damages suits are brought against the remaining defendants in their individual capacities.

**6.** Although qualified immunity is waived if not adequately argued, *see Blissett v. Coughlin*, 66 F.3d 531, 538–39 (2d Cir.1995), all of the defendants remaining in the case asserted qualified immunity as an affirmative defense in their answers to plaintiff's complaint.

**7.** Although the Supreme Court has said, in *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), that the normally better approach for courts confronted with a qualified immunity claim is first to address the plaintiff's claim that his constitutional rights were violated and only afterward to decide whether the defendants are entitled to qualified immunity, we believe that this is one of the "appropriate cases" in which we may "go directly to the qualified immunity issue." *Horne v. Coughlin*, 191 F.3d 244, 248 (2d Cir.1999) (2d Cir. 1999). Deciding plaintiff's claim that the *Santiago* order violates his constitutional rights would require reaching possibly difficult questions of equal protection in the absence of a plaintiff who actually comes under the *Santiago* order; and, furthermore, given

that other white inmates at the Elmira facility continue to come under the order and to be in a position to seek injunctive relief, "[t]here is no reason to believe that the [*Santiago* order] will repeatedly, or over a substantial time, escape judicial review by reason of qualified immunity." *Id.* at 250.

**8.** "In a federal § 1983 suit, the same preclusive effect is given to a previous state court proceeding as would be given to that proceeding in the courts of the State in which the judgment was rendered." *Leather v. Ten Eyck*, 180 F.3d 420, 424 (2d Cir.1999); *see also* 28 U.S.C. § 1738 (1994). Under New York law:

> Collateral estoppel ... "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party ..., whether or not the tribunals or causes of action are the same." The doctrine applies if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action.

cumstances, the district court's denial of plaintiff's request to amend his complaint to add the claim does not represent an abuse of discretion.[9]

## C.

■ The clear failure, as a matter of law, of all of plaintiff's substantive claims means that any error committed by the district court in denying plaintiff's request that counsel be appointed was, in the circumstances of this case, harmless.[10]

## III. CONCLUSION

We have reviewed all plaintiff's remaining claims and find them to be without merit. Accordingly, the district court's judgment is AFFIRMED.

---

*Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 690 N.Y.S.2d 478, 482, 712 N.E.2d 647 (1999) (quoting *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487 (1984)) (internal citations omitted; alteration in original). Although collateral estoppel, like qualified immunity, is an affirmative defense that may be waived if not pleaded, *see Leather*, 180 F.3d at 424, all of the defendants remaining in the case asserted collateral estoppel as an affirmative defense in their answers to plaintiff's complaint.

Finally, although petitioner is collaterally estopped from arguing in this court that defendants violated the *Santiago* decree on the ground that this claim was rejected in the Article 78 proceeding, we note that petitioner may well be able directly to challenge the Article 78 order in State court.

9. A district court's decision to grant or deny a leave to amend a complaint is reviewed for abuse of discretion. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993) (per curiam).

10. That said, we do have doubts as to the district court's decision to deny counsel when it did. Plaintiff had expressly complained of his inability to compile the evidence on which his case depended. And, at the time, the complexity of the legal issues involved might well have seemed not insignificant. Moreover, at that stage of the suit, plaintiff's possibility of success could not be dismissed out of hand, as the district court's appropriately careful three step procedure itself suggests.