Jamil REHMAN, M.D., Plaintiff,

v.

The STATE UNIVERSITY OF NEW YORK AT STONY BROOK; Stony Brook University School of Medicine; Stony Brook University Medical Center; Shirley Strum Kenny, Ph.D. individually and in her official capacity as President of the State University of New York at Stony Brook; Richard Fine, M.D., individually and in his official capacity as Dean of the School of Medicine at Suny Stony Brook; and Wayne Waltzer, M.D., individually and in his official capacity as Chair of the Department of Urology at the State University of New York at Stony Brook, Defendants.

No. 08CV0326 (ADS)(MLO).

United States District Court, E.D. New York.

Feb. 6, 2009.

Beldock Levine & Hoffman LLP by
Cynthia Rollings, Esq., Rachel Miriam

Kleinman, Esq., Of Counsel, New York, NY, for plaintiff.

Andrew M. Cuomo, Attorney General of the State of New York by Toni E. Logue, Assistant Attorney General, Mineola, NY, for defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

### I. BACKGROUND

The following facts are derived from the parties' pleadings. On this motion, the Court also considers documents incorporated by reference in the complaint. *Nechis v. Oxford Health Plans Inc.*, 421 F.3d 96, 100 (2d Cir.2005) (noting that on a 12(b)(6) motion to dismiss, the Court must limits its "consideration to facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference").

The plaintiff, Jamil Rehman, M.D. ("Rehman"), is a Board Certified urologist licensed to practice in the State of New York. At the time of filing of the present action, the plaintiff was 51 years of age, is a Pakistani–American, and a practicing Muslim. The individual defendants are Shirley Strum Kenny, the President of the State University of New York, Stony Brook (SUNY Stony Brook); Richard Fine, M.D., Dean of the School of Medicine at SUNY Stony Brook; and Wayne Waltzer, M.D., the Chair of the Department of Urology of the SUNY Stony Brook School of Medicine.

The plaintiff alleges that in August of 2002, he was offered a teaching position as Assistant Professor in the Department of Urology in the School of Medicine at SUNY Stony Brook, a non-tenured year to year position based upon a written agreement. The plaintiff contends that at the time he was recruited, he was told by Dr. Waltzer that all Assistant Professors received the standard year to year appointment, but that Dr. Waltzer would recommend the plaintiff for promotion to Associate Professor after he commenced employment; that he would be "fast tracked" to a tenure track position; and that his salary would be increased shortly after his employment began. The plaintiff further contends that he was informed by Dr. Waltzer that he would be furnished with sufficient non-clinical time to pursue research activities as well as time to develop two programs for the University: the laparoscopic surgery/oncology program and the laparoscopic live donor nephrectomy program.

The plaintiff contends that in addition to spearheading the two laparoscopic surgery programs, he alone enhanced the standard of care at the Stony Brook Medical Center by performing and teaching advanced surgical procedures; advocated for the development of a robotic surgery program; and encouraged community urologists to bring their cases to the Stony Brook Medical Center, which improved the training available to the institution's residents. Further, the plaintiff contends that he was complimented by Dr. Waltzer for his contributions to the department in a memo dated February 15, 2005 and received the Resident Teaching and Attending of the Year Award in 2006.

Despite the positive feedback of the plaintiff's work, he states that Dr. Waltzer refused to propose the plaintiff for appointment to Associate or Full Professor with tenure, contrary to his promise and despite the plaintiff's requests. In addition, the plaintiff contends that he received only one salary increase during his time at SUNY Stony Brook and that another physician hired by the Urology Department after the plaintiff, who was less qualified, but non-Asian and non-Muslim, was treat-

ed more favorably than the plaintiff in terms of pay and promotion opportunities. Further, the plaintiff alleges that when he requested leave time to pursue educational and research opportunities, he was forced to do so without pay and without health benefits. The plaintiff contends, however, that his non-minority counterpart was offered paid leave to pursue an MBA education.

The plaintiff also contends that defendant Waltzer assigned him to the urology resident clinic for three years, more than any other attending physician in the Department, requiring long hours and adversely affecting the plaintiff's income as reimbursement for clinic patients is less than other patients. The plaintiff alleges that his research activities have been denied financial support and his ability to perform laparoscopic live-donor nephrectomy and his access to the Cancer Center were blocked by Dr. Waltzer. Further, the plaintiff alleges that his surgeries were disrupted at the direction of Dr. Waltzer. The plaintiff contends that Dr. Waltzer referred to his race and religion as reasons for this treatment.

The plaintiff states that he protested and submitted oral and written complaints about this discriminatory treatment. On January 20, 2005, the plaintiff wrote to Dr. Waltzer protesting the discrepancy in his salary compared to other new hires in the Department. Further, in or about September 2005, the plaintiff protested Dr. Waltzer's unfair treatment to Dr. Norman Edelman, the then Dean of the Medical School.

The plaintiff was later informed that Dr. Edelman had spoken to Dr. Waltzer, who would be collecting and submitting the plaintiff's materials for submission to the Faculty Appointment, Promotion, and Tenure Committee. However, the plaintiff contends that no collection, submission or promotion materialized. On October 1, 2003, the plaintiff sent an e-mail message to several faculty members complaining of Dr. Waltzer's failure to submit the materials for plaintiff's promotion and requesting assistance.

On August 30, 2006, the plaintiff wrote a letter to Shirley Strum Kenny, President of SUNY Stony Brook, protesting the discriminatory acts and practices of Dr. Waltzer, and also detailing what he believed to be inappropriate billing practices within the Department, as well as perceived HIPPA violations and violations of the "Patients' Bill of Rights." In addition, the plaintiff contends that he was outspoken about these disturbing practices, and other patient safety issues, such as the disruption of the plaintiff's surgeries, the withholding of instruments from the plaintiff during his surgeries, and the knowing falsification of the credentials of certain department members.

The plaintiff contends that as a result of his protests, he suffered retaliation. In addition to the continuation of the disparate treatment that the plaintiff had previously complained about, he alleges that equipment that he was awarded pursuant to a state grant was removed from his laboratory by Dr. Waltzer and relocated to the operating room, so that the plaintiff could no longer use it to pursue his research. Thereafter, Dr. Waltzer failed to acknowledge the plaintiff in urology conferences, he continued to block the plaintiff from participating in the donor nephrectomy program and the Cancer Center, the disruption of his surgeries continued, and the plaintiff was excluded from the professional activities of the Urology Department.

On March 30, 2007, Dr. Waltzer submitted an unfavorable performance evaluation of the plaintiff, which the plaintiff contends included false allegations, and in which Dr.

Waltzer recommended that the plaintiff's year to year employment not be renewed. Finally, on April 4, 2007, the plaintiff received a letter of non-renewal of his appointment from Dr. Fine. The letter stated that the plaintiff's appointment was initially renewed from August 1, 2003 to July 31, 2007 and that he would be given an additional appointment from August 1, 2007 to April 9, 2008, but that his appointment would not be renewed beyond that point. (Defendant's Exh. B). On April 13, 2007, following the receipt of the letter, the plaintiff filed a claim with the Equal Opportunity Employment Commission ("EEOC"), complaining of discrimination and retaliation by the defendants. The plaintiff contends that Dr. Waltzer's retaliatory behavior intensified following his complaint to the EEOC.

The plaintiff filed the present action on January 23, 2008, presenting the following twelve causes of action:

- Count I: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), against all defendants for discrimination on the basis of race, color, religion and/or ethnic origin;

- Count II: New York State Human Rights Law ("NYSHRL"), Executive Law § 296(1)(a) against all defendants for discrimination on the basis of race, creed, color, or national origin;

- Count III: Title VII against all defendants for retaliation;

- Count IV: New York State Human Rights Law, Executive Law § 296(7) against all defendants for retaliation;

- Count V: 42 U.S.C. § 1981 against all defendants for discrimination on the basis of race and religion;

- Count VI: Age discrimination against all defendants in violation of 29 U.S.C. § 621, *et seq.*, and the New York State Human Rights Law;

- Count VII: 42 U.S.C. § 1983, violation of the Equal Protection guarantees of the Fourteenth Amendment to the United States Constitution on the basis of race, color, religion and/or ethnic origin against all defendants;

- Count VIII: Violation of the Equal Protection guarantees under the New York Constitution on the basis of race, color, religion and/or ethnic origin against all defendants;

- Count IX: 42 U.S.C. § 1983, violation of the plaintiff's First Amendment rights as against all defendants;

- Count X: 42 U.S.C. § 1983, violation of the Due Process clause of the Fourteenth Amendment to the United States Constitution;

- Count XI: Breach of Contract, including the covenant of good faith and fair dealing; and

- Count XII: Waste of state assets.

On March 18, 2008, the defendants filed the present Fed.R.Civ.P. 12(b)(6) motion to dismiss the complaint. In his opposition, the plaintiff stipulated to dismissal, without prejudice of the following: (1) his claims for damages against the New York State defendants SUNY Stony Brook, Stony Brook School of Medicine, and Stony Brook Medical Center, for age discrimination in violation of the ADEA; (2) his § 1981 and § 1983 claims for damages against the New York State defendants and the individual defendants in their official capacities; (3) his state law claim for retaliation against the New York State defendants; (4) his state law claim for breach of contract against the New York State defendants; (5) his state law claim for waste against the New York state defendants; (6) his Title VII claims for discrimination against the individual defendants; and (7) his Title VII claim for discrimination against the SUNY School of Medicine. The plaintiff opposed the de-

fendants' motion to dismiss in all other respects.

## II. DISCUSSION

At the pleading stage of litigation, the plaintiff need only provide a " 'short and plain statement' " that " 'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512–13, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)); *see also* Fed.R.Civ.P. 8(a)(2). This notice pleading standard expects "liberal discovery rules and summary judgment motions to define disputed facts and issues to dispose of unmeritorious claims." *Swierkiewicz*, 534 U.S. at 512, 122 S.Ct. 992, 152 L.Ed.2d 1.

In considering a 12(b)(6) motion to dismiss, " '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir.2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). In this regard, the Court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Starr v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 (2d Cir.2005); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir.1999).

Further, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). According to the Second Circuit, in *Twombly*, "the Supreme Court held that a complaint must allege facts that are not merely con-

sistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007). Indeed, the *Twombly* Court noted that "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S.Ct. at 1965 (internal citations omitted).

Significantly, the Supreme Court has specifically stated that "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a *prima facie* case of discrimination under the framework set forth in *McDonnell Douglas* ...." *Swierkiewicz*, 534 U.S. at 508, 122 S.Ct. 992, 152 L.Ed.2d 1 (internal citation omitted). Instead, in order to survive a motion to dismiss, the plaintiff's complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief" as required by Fed.R.Civ.P. 8(a)(2), amplified by sufficient factual allegations to satisfy the plausibility standard set forth in *Twombly*, "in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir.2007).

### A. Statutes of Limitation

█ The defendants assert that the plaintiff's claims pursuant to Title VII based upon actions arising prior to June 16, 2006 and pursuant to NYSHRL §§ 290, *et seq.*, prior to January 28, 2005 are barred by the applicable statute of limitations. Pursuant to Title VII, a charge of discrimination must be filed with the Equal Employment Opportunity Commission ("EEOC") within 180–days of any alleged unlawful employment practice or 300–days where there is a State or local

agency with authority to grant or seek relief from such practice. 42 U.S.C. § 2000e–5(e)(1). Because New York has its own anti-discrimination laws and enforcement agency, the statute of limitations for filing a charge of discrimination with the EEOC is 300–days after the alleged occurrence of an unlawful employment practice. *Id.*; *Harris v. City of New York*, 186 F.3d 243, 247 n. 2 (2d Cir.1999). Failure to timely file a charge with the EEOC renders the subject claim time-barred, preventing a claimant from bringing her claim in federal court. *Elmenayer v. ABF Freight System, Inc.*, 318 F.3d 130 (2d Cir.2003); *Starr v. Time Warner, Inc.*, No. 07CV5871, 2007 WL 4144627, at *3 (S.D.N.Y. Nov. 21, 2007). In addition, the NYSHRL provides for a three year statute of limitations. New York Exec. Law. §§ 290, *et seq.*

■ With respect to the limitations period, the Supreme Court has differentiated between claims of discrete discriminatory acts and claims of hostile work environment. "Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" and "each discrete discriminatory act starts a new clock for filing charges alleging that act." *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). It is well-settled that certain adverse employment practices such as the failure to promote, failure to compensate adequately, undesirable work transfers, and denial of preferred job assignments are discrete acts. *Mix v. Delaware and Hudson Ry. Co.*, 345 F.3d 82, 89 (2d Cir. 2003). In such cases, "each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." *Morgan*, 536 U.S. at 114, 122 S.Ct. 2061, 153 L.Ed.2d 106.

Here, the plaintiff has no right to recover damages based upon discrete acts of discrimination occurring prior to June 16, 2006 under Title VII or prior to January 28, 2005, under the NYSHRL respectively. However, events occurring prior to these dates may be considered in the context of his hostile work environment claim.

Further, the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111–2, 2009 S. 181 (2009), with a retroactive effective date of May 28, 2007, altered the limitations period to be applied in wage discrimination cases. The Act provides that: (1) "an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid ...."; and (2) "liability may accrue and an aggrieved person may obtain relief ... including recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge." According to the terms of the Act, the plaintiff's wage discrimination claims based upon actions occurring on or after April 13, 2005, two years prior to his EEOC charge, are timely.

B. *As to the Plaintiff's Claims of Age Discrimination (Count VI)*

■ As noted above, the plaintiff has stipulated to the dismissal of his age dis-

crimination claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* as to the New York State defendants insofar as those claims seek monetary damages. However, the plaintiff contends that he can maintain a cause of action pursuant to the ADEA for injunctive relief against all defendants and for damages against the individual defendants. Although not specifically ruled on by the Second Circuit, it is clear that the plaintiff may not maintain ADEA claims against the individual defendants, and liability with respect to the individual defendants can only obtain pursuant to the NYSHRL. *See Hogan v. J.P. Morgan Chase Bank,* No. 05CV5342, 2008 WL 4185875 (E.D.N.Y. Sept. 4, 2008) ("The law is clear that an age discrimination claim brought pursuant to the ADEA cannot lie against an individual."); *see also Falbaum v. Pomerantz,* 19 Fed.Appx. 10 (2d Cir. 2001) (expressing doubt as to whether ADEA claims could be applied to individual defendants).

■ Like other discrimination claims, to establish a *prima facie* case of age discrimination, the plaintiff must show that he is a member of a protected class; he was qualified for his position; he suffered an adverse employment action; and circumstances exist that support an inference of age discrimination. *Kassner v. 2nd Avenue Delicatessen Inc.,* 496 F.3d 229, 238 (2d Cir.2007). However, as noted above, at the motion to dismiss stage, "plaintiffs need not plead a *prima facie case* and may withstand a motion to dismiss by meeting a lesser standard. Plaintiffs need only comply with Rule 8(a)(2) by providing a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendants fair notice of plaintiffs' claims of age discrimination and the grounds upon which those claims rest." *Id.* at 238. In addition, claims pursuant to

the NYSHRL are subject to the same analysis as claims brought pursuant to the ADEA. *Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir.2001). Here, the plaintiff has failed to meet even this liberal pleading standard.

■ First, aside from alleging that he was age 51 at the time his employment was terminated, the plaintiff has not made a single allegation that his termination or the alleged disparate treatment was related to his age. The plaintiff fails to allege that the counterparts who allegedly received better treatment were younger than the plaintiff, including the subsequently hired and allegedly less-qualified comparator referred to in paragraph 34 of the plaintiff's complaint. Accordingly, the plaintiff's claims for age discrimination under the ADEA and NYSHRL § 296(7) are dismissed without prejudice and with leave to amend.

*C. As to the Plaintiff's Claims Pursuant to Title VII (Counts I and III)*

The plaintiff has stipulated to the dismissal of his Title VII claims against the individual defendants in their individual capacities and against the SUNY School of Medicine because he did not include that entity in his EEOC complaint.

The defendants contend that the plaintiff fails to state a claim for retaliation because (1) the majority of the wrongdoing alleged by the plaintiff occurred prior to his complaints and merely continued after the complaints; (2) the actions allegedly taken in retaliation do not rise to the level of cognizable adverse employment actions; and (3) the poor evaluation received on March 30, 2007 and the later notice of nonrenewal in April 2007 are too attenuated in time from the plaintiff's last complaint in August 30, 2006 to support a claim for retaliation.

■ In order to establish a claim for retaliation, a plaintiff must show that: (1) he engaged in a protected activity; (2) his employer was aware of this activity; (3) he suffered an adverse employment action; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 608 (2d Cir. 2006). In *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), the Supreme Court held that the anti-retaliation provision of Title VII, unlike its substantive provision, is not limited to discriminatory actions that affect the terms and conditions of the plaintiff's employment. *White*, 548 U.S. at 68, 126 S.Ct. 2405, 165 L.Ed.2d 345. Instead, "[t]o prevail on a claim for retaliation under Title VII, 'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which … means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Kessler v. Westchester County Dept. of Social Services*, 461 F.3d 199, 207 (2d Cir.2006) (quoting *White*, 548 U.S. at 68, 126 S.Ct. 2405, 165 L.Ed.2d 345). Accordingly, pursuant to the Court's decision in *White*, a plaintiff need only show that his employer took an action that a reasonable employee would find to be materially adverse. The action need not affect the terms of employment

■ The Court finds that the plaintiff has sufficiently alleged adverse actions in response to his complaints. The plaintiff contends that following his complaints, certain equipment awarded to him pursuant to a grant was removed from his laboratory at the direction of Dr. Waltzer. Further, the plaintiff contends that he was ignored by Dr. Waltzer at professional meetings and excluded from professional activities, such as interviewing faculty and residents. Finally, the plaintiff contends that he was disrupted during surgery and denied proper equipment, facilities, and assistance during his surgical procedures in retaliation for his complaints.

Such actions, if true, might well have dissuaded Rehman's complaints for fear that his ability to carry out his professional duties would be compromised. *Deshpande v. Medisys Health Network, Inc.*, No. 07CV0375, 2008 WL 2004160, at *5 (E.D.N.Y. May 07, 2008) (finding that physician stated a claim for retaliation where he alleged that the monitoring to which he was subjected and a one-year-rather than a two-year-renewal of his hospital privileges were selectively applied only to him and not to other similarly situated physicians following complaints of discrimination).

■ Further, although occurring approximately eight months after Dr. Rehman's last complaint concerning Dr. Waltzer's behavior, it is undisputed that the very next evaluation of the plaintiff's performance was poor and contributed to the non-renewal of his employment agreement. Despite the defendant's contentions, there is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman–Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir.2001). In *Deshpande*, the Court declined to find that five months between the plaintiff's protected actions and the allegedly retaliatory act foreclosed the possibility of establishing a causal connection. *Deshpande*, 2008 WL 2004160, at *6. Instead, the court found that the plaintiff would "have [an] opportunity through discovery to produce direct evidence of a causal connection or to argue

that, under the circumstances of this case, five months is temporally close enough to support an inference of causation." *Id.* The Court here reaches the same conclusion.

As the plaintiff has stated a claim for retaliation, the Court need not consider now whether the continuation of the activities forming the basis of Dr. Rehman's initial complaints can serve as additional evidence of retaliation.

### D. As to the Plaintiff's Claims Pursuant to 42 U.S.C. § 1981 (Count V)

■ The plaintiff stipulates to the dismissal of his § 1981 claim for monetary damages against the state entities and his § 1981 claim against the individual defendants in their official capacities based upon the Eleventh Amendment to the United States Constitution. However, the plaintiff contends that he may maintain his claim against the state entities and officials insofar as it seeks prospective injunctive relief and against the individual defendants in their individual capacities.

The defendants contend that the plaintiff's claims pursuant to § 1981 must be dismissed because § 1983 is the only remedial provision for claimed violations of the federal rights protected by § 1981. Section 1983, provides for a legal remedy against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. However, § 1983 does not, itself confer any substantive rights. *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir.2004). On the other hand, § 1981 is the source of certain substantive rights providing that "[a]ll persons within the jurisdiction of the United States shall

have the same right ... to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981(a).

In *Patterson*, the Second Circuit recognized that " 'the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units....' " *Patterson*, 375 F.3d at 225 (quoting *Jett v. Dallas Independent School District*, 491 U.S. 701, 733, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)). Courts have interpreted this prohibition to extend to actions against individual defendants in their individual capacities. *See Westbrook v. City University of New York*, 591 F.Supp.2d 207, 222–24 (E.D.N.Y.2008). " 'State employment has generally been deemed sufficient to render the defendant a 'state actor.' " *Id.* (quoting *Roddini v. City University of New York*, No. 02CV4640, 2003 WL 435981, at *5 (S.D.N.Y.2003)); *see also Whaley v. City University of New York*, 555 F.Supp.2d 381, 400–01 (S.D.N.Y.2008) ("The holding in Jett has been interpreted to encompass not only governmental entities, but also individuals sued in their individual capacities who are 'state actors' ".) Accordingly, the plaintiff does not have an independent § 1981 claim against any of the defendants and the Court will construe the plaintiff's § 1981 claims as brought pursuant to § 1983.

### E. As to the Plaintiff's Claims Pursuant to 42 U.S.C. § 1983

#### 1. Eleventh Amendment Immunity

The plaintiff stipulates to the dismissal of his § 1983 claims for monetary damages against the state entities and his § 1983 claims against the individual defendants in their official capacities based upon the Eleventh Amendment to the United States Constitution. However, the plaintiff contends that he may maintain his claim

against the state entities and officials insofar as it seeks prospective injunctive relief and against the individual defendants in their individual capacities.

■■■■ In *Dube v. State University of New York,* 900 F.2d 587 (2d Cir.1990) the Second Circuit explained that because SUNY was an integral part of the state government and it did not waive Eleventh Amendment immunity, no relief, legal or equitable was available against it. *Dube,* 900 F.2d at 594. However, the court explained that prospective relief claims for violations of federal Constitutional rights could be maintained against the individual defendants acting in their official capacities, which would provide the same relief as an action maintained against SUNY itself. *Id.* at 596. Accordingly, here, the State defendants are entitled to complete immunity, but the plaintiff may maintain his claim against the individual defendants in their official capacities for prospective relief. Further, the Eleventh Amendment provides no immunity for individual defendants sued in their individual capacities. *See id.*

In addition to compensatory damages, the plaintiff's demand for relief seeks an injunction to prevent the defendants "from any further acts adversely affecting the terms and conditions of plaintiff's employment including his appointments, compensation and privileges." The defendants contend that the plaintiff's claims for injunctive relief have been rendered moot because as of April 9, 2008, the plaintiff is no longer employed at SUNY Stony Brook or at the Stony Brook Medical Center and is currently working as a physician in Maryland. *See Ehrenberg v. Goord,* 7 Fed. Appx. 80, 83 (2d Cir.2001) (finding moot the plaintiff's request for injunctive relief where he was transferred out of prison facility that he claimed denied him a preferential work assignment on the basis of race). It is unclear from the pleadings whether the plaintiff seeks reinstatement of his former position. Accordingly, drawing all reasonable inferences in favor of the plaintiff, the Court finds that the plaintiff has stated a claim for prospective injunctive relief against the individual defendants acting in their official capacities. *See Miles v. Baruch College,* No. 07CV1214, 2008 WL 222299, at *4 (E.D.N.Y. January 25, 2008) (declining to dismiss on Eleventh Amendment immunity grounds, plaintiff's claims against state officials under § 1981 and § 1983, seeking reinstatement).

### 2. As to the Plaintiff's Claims for Violation of § 1981

Aside from contesting the viability of the plaintiff's § 1981 claim as a separate cause of action, the defendants do not dispute that the plaintiff's discrimination claims are substantively sufficient to withstand a motion to dismiss. Therefore, the plaintiff's claims for violation of § 1981 will proceed under § 1983 as to the individual defendants in their official capacities with respect to his claim for injunctive relief and as to the individual defendants in their individual capacities in all other respects.

### 3. As to the Plaintiff's Claims for Violation of the First Amendment (Count IX)

■■■■ The complaint alleges that the plaintiff's voiced certain concerns to University President Kenny and others, including the plaintiff's statements that Dr. Waltzer engaged in discriminatory conduct and deceptive billing, as well as the plaintiff's statements that patient safety was threatened by certain hospital practices. The defendants contend that the plaintiff's speech was not protected by the First Amendment because these statements were truly calculated to redress the plain-

tiff's personal grievances rather than seeking to serve a broader public purpose.

A public employee claiming retaliation for the exercise of his First Amendment rights must establish: "(1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) he or she suffered an adverse employment action, and (3) the speech was at least a substantial or motivating factor in the adverse employment action." *Johnson v. Ganim,* 342 F.3d 105, 112 (2d Cir. 2003) (internal quotations and citations omitted). Pursuant to the Supreme Court's decision in *Garcetti v. Cebullos,* 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti,* 126 S.Ct. at 1960. However, as the plaintiff's primary duties are as physician and professor, his speech regarding hospital practices was not dictated directly by his duties and can be viewed as a citizen's speech on a matter of public concern.

Speech is deemed a matter of public concern where it relates to "to any matter of political, social, or other concern to the community." *Id.* (quoting *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). The Court finds that the plaintiff's complaints to Kenny, the President of SUNY Stony Brook, and others regarding billing practices, safety concerns, and credentialing of department members in the Medical Center were related to matters of public welfare, rather than merely to his own grievances, and are sufficient to survive the present motion to dismiss. *See Reuland v. Hynes,* 460 F.3d 409 (2d Cir.2006) (finding the plaintiff's statement to a magazine reporter that the district in which he was employed was the best place to be a homicide prosecutor because it had more dead bodies per square inch than any place else constituted a statement on a matter of public concern because his statement addressed the crime rate in the district, which was a matter of political, social, or other concern to the community).

### 4. As to the Plaintiff's Claims for Violation of Due Process (Count X)

The complaint alleges that the defendants' nonrenewal of the plaintiff's employment based on discriminatory and retaliatory reasons constitutes a deprivation of protected property and liberty interests. The defendants contend that the plaintiff's Due Process claims must be dismissed because the plaintiff has failed to establish a substantive liberty or property interest in his position at the Medical Center.

In order to prevail on a § 1983 claim for violation of the procedural due process rights guaranteed by the Fourteenth Amendment, the plaintiff must show (1) that he possessed a protected liberty or property interest; and (2) that he was deprived of that interest without due process. *McMenemy v. City of Rochester,* 241 F.3d 279, 285–86 (2d Cir.2001).

The Constitution protects property interests, but does not create them. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth,* 408 U.S. at 577, 92 S.Ct. 2701, 33 L.Ed.2d 548. "The Supreme Court has explained that '[t]o have a property interest in a benefit, a person clearly must have more than an abstract

need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *McMenemy*, 241 F.3d at 286 (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

In *Donato v. Plainview–Old Bethpage Cent. School Dist.*, 96 F.3d 623 (2d Cir. 1996), the Second Circuit found that the plaintiff had no property interest in her nontenured appointment as a school assistant principal where her hiring notice clearly described her appointment as probationary and the applicable education statute allowed for termination on the recommendation of the superintendent of schools, by a majority vote of the board of education. *Donato*, 96 F.3d at 629.

Further, in *Dube v. State University of New York*, the plaintiff, a college professor, alleged that his due process rights were violated by the defendant's promotion tenure review procedure. *Dube*, 900 F.2d at 599. The court stated that "a claim to tenure constitutes a protected property interest only if it amounts to a legitimate claim of entitlement thereto." *Id.* (internal quotations and citations omitted). The court found that the record indicated only that the plaintiff was entitled to be considered for tenure "in accordance with established contractual procedures," and concluded that such entitlement did not rise to the constitutional level of a protected interest. *See id.* (collecting cases); *see also Jones v. Kneller*, 482 F.Supp. 204, 210 (E.D.N.Y.1979) (contractual right of tenure review and confrontation held not to give rise to Fourteenth Amendment property interest), *aff'd mem.*, 633 F.2d 204 (2d Cir.), *cert. denied*, 449 U.S. 920, 101 S.Ct. 318, 66 L.Ed.2d 147 (1980).

■ Here, the plaintiff's employment was dictated by the appointment letter of March 29, 2002, which by its express terms was a term appointment from August 1, 2002 to July 31, 2003. Although the plaintiff's term was renewed for the period from August 1, 2003 through July 31, 2007, he had no right to renewal or a constitutionally protected property interest in his expectation of renewal. In addition, the plaintiff points to no specific SUNY Stony Brook policy or practice sufficient to create an implied understanding that his contract would be continually renewed. *See Donato*, 96 F.3d at 629 (citing *Perry v. Sindermann*, 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972) (adherence to a pattern of conduct could create an expectation of continued employment)); *Ezekwo v. New York City Health & Hospitals Corp.*, 940 F.2d 775, 783 (2d Cir.1991) (finding a property interest in Chief Resident position where hospital adopted an established policy of awarding the position to all third year residents on a rotating basis).

■ The plaintiff also asserts a liberty interest in his employment with the defendants. Indeed, the liberty interests contemplated by the Fourteenth Amendment include the freedom "to engage in any of the common occupations of life." *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). "However, as understood by the Fourteenth Amendment, a decision not to reemploy, standing alone, does not deprive an employee of liberty." *Donato*, 96 F.3d at 630.

■ Liberty interests are implicated only where there are special aggravating circumstances. "[W]hen the state fires an employee and publicly charges that she acted dishonestly or immorally, due process guarantees the employee an opportunity to defend her 'good name, reputation, honor or integrity.'" *Id.* at 630 (quoting *Roth*, 408 U.S. at 573, 92 S.Ct. at

2707); *see also Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (rejecting the theory that the mere fact of dismissal, absent some publicizing of the reasons for the action, could amount to a stigma infringing one's liberty). A stigmatizing statement is deemed publicly disclosed where it is placed in the employees personnel file and is likely to be shared with prospective future employers. *Id.* at 631.

 A governmental statement that an employee is incompetent or can no longer perform his job is more damaging than a statement that an employee performed their job poorly because it carries a greater potential for disqualification from future employment. *Id.* at 630. Public charges that go to a person's professional competence sufficiently impair a liberty interest and require that the employee be afforded an opportunity to clear his name. *O'Neill v. City of Auburn*, 23 F.3d 685, 692 (2d Cir.1994); *cf. Roth*, 408 U.S. at 575, 92 S.Ct. at 2708 ("It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another"); *Astwood v. Department of Corrections*, 45 Fed.Appx. 40, 42 (2d Cir. 2002) (upholding summary judgment in favor of defendant where termination letter of prison dentist noting "continuous performance problems" would not be a significant roadblock to future employment).

 Here, the plaintiff contends that the letter of March 30, 2007, recommending that his employment be denied renewal, contained false statements. The Court has not been provided a copy of that letter, but accepting as true the plaintiff's allegation that the letter contained false statements about his ability to fulfill his duties, the Court finds that the plaintiff has sufficiently stated a claim under the Due Process clause of the Fourteenth Amendment.

### F. As to the Plaintiff's State Law Claims

#### 1. Eleventh Amendment Immunity

As noted above, the plaintiff has stipulated to the dismissal of his state law claim for retaliation against the New York State defendants; his state law claim for breach of contract against the New York State defendants; and his state law claim for waste against the New York State defendants. Accordingly, the plaintiff proceeds with his state law claims only against the individual defendants in their individual capacities.

#### 2. New York State Retaliation (Count IV)

The defendants repeat the arguments made regarding the plaintiff's Title VII retaliation claims with respect to the plaintiff's retaliation clams brought under the NYSHRL. As discussed in section II(B) above, the plaintiff has alleged facts sufficient to support a claim for retaliation. Accordingly, the defendants' motion to dismiss is denied.

#### 3. Breach of Contract

 The plaintiff contends that the defendants breached the covenant of good faith and fair dealing by inducing his acceptance of the Assistant Professor position with SUNY Stony Brook by making affirmative assurances and then failing to propose the plaintiff for appointment or promotion to Associate or Full Professor. Further, the plaintiff claims that he should be compensated for the injuries he sustained by taking the position at SUNY Stony Brook where his acceptance was fraudulently induced by Dr. Waltzer's assurances that the plaintiff would be fast tracked for a promotion and afforded sufficient time for research at the Medical Center.

At the outset, the Court notes that under New York Law, a claim for breach of an implied covenant of good faith and fair dealing does not provide a cause of action separate from a breach of contract claim. "[P]arties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Harris v. Provident Life & Accident Ins. Co.,* 310 F.3d 73, 80 (2d Cir.2002) (citing *Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro,* 961 F.2d 1052, 1056 (2d Cir. 1992)); *Village On Canon v. Bankers Trust Co.,* 920 F.Supp. 520, 534 (S.D.N.Y. 1996) (breach of good faith and fair dealing claim does not provide independent basis for recovery). Here, the plaintiff does not, and cannot, assert that the defendants breached any express term of the parties' agreement, which clearly provided for a term appointment. Accordingly, with no breach of contract claim, the question becomes whether the plaintiff may maintain a separate tort cause of action for fraudulent inducement. *Smalley v. Dreyfus Corp.,* 10 N.Y.3d 55, 853 N.Y.S.2d 270, 882 N.E.2d 882 (2008).

Where a party asserts fraudulent inducement to an employment agreement, he must show: (1) that the alleged inducing misrepresentation was collateral to the agreement; and (2) was not inconsistent with the agreement. *Naccarato v. Commercial Capital Corp.,* 19 Misc.3d 1109(A), 2008 WL 795774, at *5 (N.Y. Sup. New York County March 13, 2008). The parole evidence rule does not preclude evidence of fraudulent inducement as long as the agreement at issue does not contain a clause specifically disclaiming reliance upon outside representations. *Id.*

In *Smalley,* the New York Court of Appeals discussed at length the Second Circuit's holding in *Stewart v. Jackson &* *Nash,* 976 F.2d 86 (2d Cir.1992). The Court explained:

> In *Stewart,* defendant law firm recruited an environmental law attorney (plaintiff Victoria Stewart), telling her that it had secured a large environmental law client, that she would work on that client's matters and that the firm was establishing an environmental law department, which she would head. When Stewart arrived at the firm, however, she learned that the firm was still trying to secure the client, and she performed only general litigation work. The firm later terminated her employment, and she brought suit for damages. Reversing the United States District Court, the Second Circuit denied the law firm's motion to dismiss Stewart's fraudulent inducement claim both because the firm's promises concerning the environmental law client and department were misstatements of present fact, and because the alleged injuries-thwarting her professional objective to specialize in environmental law, and damaging her career potential-occurred well before plaintiff's termination and were unrelated to it.

*Smalley,* 10 N.Y.3d 55, 58–59, 853 N.Y.S.2d 270, 882 N.E.2d 882. With this background, the *Smalley* Court dismissed the plaintiffs' fraudulent inducement claims because they alleged no injury above and beyond termination of their employment. *Id.* 10 N.Y.3d 55, 59, 853 N.Y.S.2d 270, 882 N.E.2d 882.

Critical to the Second Circuit's decision in *Stewart* was the distinction between "a prospective business partner's promissory statements as to what will be done in the future, which give rise only to a breach of contract claim, and his or her false representations of present fact, which give rise to a separable claim of fraudulent inducement." *Stewart,* 976 F.2d at 89 (internal

quotations and citations omitted). The court was persuaded that the employer's assurances that it had secured a large environmental law client and was in the process of establishing an environmental law department were not merely future promises, but representations of present fact. *Id.* Here, Dr. Waltzer's purported assurances that the plaintiff would be fast tracked for promotion and would have ample time to conduct research are non-actionable future promises.

As discussed above, the plaintiff cannot maintain a claim for breach of contract. Accordingly, the plaintiff's breach of contract claim is dismissed and the plaintiff cannot state a claim for fraudulent inducement.

#### 4. Waste

■ Finally, the plaintiff asserts that the defendants have wasted state assets including equipment that the plaintiff was awarded pursuant to a grant, which was removed from the plaintiff's laboratory, making it unusable for the research purposes for which it was intended.

■ The plaintiff's claim must be dismissed. First, actions in waste are generally relegated to cases where the holder of real property causes a deterioration of the property, impairment of a mortgage, or a loss of assets or value of a corporation by its fiduciaries. *See, e.g., Fellner v. Morimoto,* 52 A.D.3d 352, 862 N.Y.S.2d 349 (1st Dept.2008) (corporate waste); *Sutton Investing Corp. v. City of Syracuse,* 48 A.D.3d 1141, 853 N.Y.S.2d 233 (4th Dep't 2008) ("[W]aste to property has been defined as any destruction, misuse, alteration, or neglect of premises by one lawfully in possession thereof to the prejudice of the . . . interest therein of another" (internal quotations and citations omitted)); *Band Realty Co. v. North Brewster, Inc.,* 59 A.D.2d 770, 771, 398 N.Y.S.2d 724 (2d Dep't.1977) ("The foundation of an action for waste by a mortgagee is the impairment of the security of the mortgage with knowledge of the lien." (citations omitted)). Further, even if the removal of laboratory equipment was a "waste" of state resources, the plaintiff fails to explain how the waste of state resources damaged him. Therefore, this claim for waste against the individual defendants must be dismissed.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that the plaintiff's age discrimination claims are dismissed without prejudice and with leave to renew; and it is further

**ORDERED,** that the defendants' motion to dismiss the plaintiff's Title VII retaliation claims is denied; and it is further

**ORDERED,** that the defendants' motion to dismiss the plaintiff's NYSHRL retaliation claims is denied; and it is further

**ORDERED,** that the plaintiff's § 1981 claim is dismissed with prejudice insofar as it is set forth as a separate cause of action; and it is further

**ORDERED,** that the defendant's motion to dismiss the plaintiff's § 1983 claims for violations of § 1981, the First Amendment, and the Due Process clause of the Fourteenth Amendment is denied; and it is further

**ORDERED,** that the plaintiff's New York State breach of contract claim is dismissed with prejudice; and it is further

**ORDERED,** that the plaintiff's New York State waste claim is dismissed with prejudice; and it is further

**ORDERED,** that the parties are directed to report to United States Magistrate

Judge Michael L. Orenstein for the purpose of setting a discovery schedule.

**SO ORDERED.**