Dr. Laverne GENTRY, Plaintiff

v.

JACKSON STATE UNIVERSITY, Defendant.

Civil Action No. 3:07CV584TSL–JCS.

United States District Court, S.D. Mississippi, Jackson Division.

April 17, 2009.

Lisa Mishune Ross, Lisa M. Ross, Attorney, Jackson, MS, for Plaintiff.

Latoya C. Merritt, Phelps Dunbar, Jackson, MS, for Defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Jackson State University for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Dr. Laverne Gentry has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion should be granted in part and denied in part.

Plaintiff Laverne Gentry filed this suit against her employer, Jackson State University (JSU), alleging she was denied tenure and a related salary increase because of her gender, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.*, 42 U.S.C. § 1981, and the Equal Protection Clause of the United States Constitution. She has also claimed retaliation in violation of Title VII and asserted a state law claim for intentional infliction of emotional distress. JSU has moved for summary judgment as to each of plaintiff's causes of action.

■ Defendant seeks summary judgment on plaintiff's § 1981 and equal protection claims on the basis that these

claims are barred by the Eleventh Amendment. This part of its motion is well taken. *See Dear v. Jackson State Univ.*, Civ. Action No. 3:07cv407WHB-LRA, 2008 WL 4225766, 4 (S.D.Miss. Sept.10, 2008) (finding that as an arm of the State of Mississippi, "the immunity provided by the Eleventh Amendment bar[red] [the plaintiff's] constitutional claims as well as her Section 1981 and 1983 claims against JSU") (citations omitted).

■ Also well taken is defendant's motion as it pertains to plaintiff's state law claim for intentional infliction of emotional distress. Defendant notes that this claims barred because plaintiff failed to comply with the notice provisions of the Mississippi Tort Claims Act. *See* Miss.Code Ann. § 11–46–11 ("[A]ny person having a claim for injury ... against a governmental entity or its employee shall proceed as he might in any action at law or in equity; provided, however, that ninety (90) days prior to maintaining an action thereon, such person shall file a notice of claim with the chief executive officer of the governmental entity ..."). Plaintiff does not deny that she failed to provide the required notice and therefore, summary judgment will be granted on this claim.

■ Defendant argues that it is entitled to summary judgment on plaintiff's Title VII claim based on the denial of tenure since the denial occurred in 2004, and plaintiff did not file her charge of discrimination with the EEOC until 2006, well after the 180 days provided by Title VII for the timely filing of a charge of discrimination. *See* 42 U.S.C. § 2000e–5(e)(1) (Under Title VII, an aggrieved employee has 180 days to timely file a charge with the EEOC). However, in the court's opinion, the denial of tenure, which plaintiff has contended negatively affected her compensation, qualifies as a "compensation decision" or "other practice" affecting compensation within the recently-enacted Lilly Ledbetter Fair Pay Act of 2009 (Fair Pay Act). That Act, which overturned the Supreme Court's holding in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007) (holding that where there is no evidence that the employer "initially adopted its [pay-rate system] in order to discriminate ... or that it later applied this system ... within the [statutory] period with any discriminatory animus," the mere fact that "this discrimination reduced the amount of later paychecks" does not mean that "each new paycheck constitutes a new violation"), provides:

> For purposes of this section, an unlawful practice occurs, with respect to discrimination in compensation in violation of this Act, when a discriminatory compensation decision or other practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, or when a person is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

29 U.S.C.A. § 626(d)(3). The court recognizes defendant's argument that "[t]he rule set out in *Ledbetter* and prior cases-that 'current effects alone cannot breathe new life into prior uncharged discrimination'-is still binding law for Title VII disparate treatment cases involving discrete acts other than pay." *Leach v. Baylor College of Medicine*, Civil Action No. H–07–0921, 2009 WL 385450 at *17 (S.D.Tex. Feb.17, 2009). However, the court's observation in *Leach* that the Supreme Court's *Ledbetter* decision continues to provide the applicable rule for discrete discriminatory acts "other than pay," though surely correct, is not helpful in this case. The plaintiff in *Leach* alleged that the defendant employer "imposed disparate job responsibilities" on

him on account of his race. There was no allegation in *Leach* that the alleged discrimination involved or affected his compensation.

In another case decided within days of the enactment of the Fair Pay Act, *Vuong v. New York Life Insurance Co.*, No. 03 Civ. 1075(TPG), 2009 WL 306391, 7 (S.D.N.Y. Feb.6, 2009), the court held that the plaintiff's August 2, 2002 charge of discrimination was untimely as to his claim based on the defendant's failure to promote him in January 1998 to co-managing partner, noting that this was "a 'discrete' act," which "plaintiff knew what was occurring at that time." *Id.* However, the court held that the plaintiff's further claim based on the defendant's adoption of a discriminatory pay allocation in February 1998, more than four years before his EEOC charge, was timely under the Fair Pay Act, since the plaintiff received compensation payments during the charging period based on the February 1998 formula.

Here, it can hardly be denied that the denial of tenure was a "discrete" act of which plaintiff was obviously aware. However, plaintiff has asserted that the denial of tenure also denied her a salary increase and hence was a compensation decision. Accordingly, the court concludes that it cannot grant summary judgment on the limitations basis urged by JSU.[1] *Cf. Rehman v. State University of New York at Stony Brook*, 596 F.Supp.2d 643, 651 (E.D.N.Y.2009) (in case involving allegations that defendant refused to propose the plaintiff for appointment to associate or full professor with tenure, court held that although plaintiff filed his EEOC charge on April 13, 2007, under Lilly Led-

better Fair Pay Act, his wage discrimination claims based upon actions occurring on or after April 13, 2005, two years prior to his EEOC charge, were timely, which claims presumably included the defendant's refusal to consider him for tenure); *Shockley v. Minner*, Civil Action No. 06–478 JJF, 2009 WL 866792, *1 (D.Del. March 31, 2009) (applying Lilly Ledbetter Fair Pay Act to find failure to promote claim timely); *Bush v. Orange County Corrections Dept.*, 597 F.Supp.2d 1293, 1295 (M.D.Fla.2009) (holding that while plaintiffs' complaint about demotions and pay reductions that occurred sixteen years before EEOC charge was filed would plainly be barred under Supreme Court's *Ledbetter* decision, "with the passage of the [Lilly Ledbetter Fair Pay Act] Plaintiffs' Title VII claims [were] no longer administratively barred").

Defendant seeks summary judgment on plaintiff's claim for gender discrimination based on pay disparity on the basis that plaintiff is unable to identify appropriate male comparators who received the benefit of the pay adjustments which plaintiff contends were not extended to her. According to defendant, the alleged comparators identified by plaintiff were not "nearly identical," principally because, unlike plaintiff, the alleged comparators qualified for the salary adjustment because they were not on an improvement plan at the time that the salary increases were made. *See Pauling v. Ocean Springs Hosp.*, No. 1:05CV262, 2007 WL 541701, 2 (S.D.Miss. Feb.16, 2007) (in disparate treatment case, "[c]ourt must examine whether the plaintiff and her comparators are similarly situated in all relevant respects and whether

1. The only ground advanced by JSU for summary judgment on plaintiff's Title VII claim relating to denial of tenure was the limitations ground. In her response, plaintiff undertook to address defendant's proffered legitimate nondiscriminatory reason for the denial of tenure, and in turn, defendant addressed that issue in its rebuttal memorandum. However, since defendant's motion as to this claim was based solely on its limitations defense, that is the only basis for summary judgment the court will consider or address.

her employer gave preferential treatment to another employee under 'nearly identical' circumstances") (citing *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir.2005)). The court, having considered the parties' arguments and reviewed the record evidence, is unable to conclude that summary judgment is appropriate on this claim.[2]

■ Plaintiff has charged that in retaliation for complaining of alleged discrimination, she was (1) removed as a major advisor for doctoral students in the spring of 1998 and (2) in April 2006, following the denial of tenure, was offered a terminal non-tenure track position, i.e., "given the option of accepting a terminal contract (effective 2007) or offered a continued contract at [her] current rate of pay...." Title VII's anti-retaliation provision makes it unlawful "for an employer to discriminate against any of his employees" because the employee engaged in a protected activity. 42 U.S.C. § 2000e–3(a). In order to establish a prima facie case of retaliation under § 2000e–3(a), a plaintiff must demonstrate: "(1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Evans v. City of Houston*, 246 F.3d 344, 352 (5th Cir.2001) (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)). "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a

charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Green v. Administrators of the Tulane Educational Fund*, 284 F.3d 642, 656 n. 6 (5th Cir.2002).

■ As to the first of plaintiff's retaliation allegations, defendant has moved for summary judgment, arguing that the claim is barred because plaintiff has failed to exhaust her administrative remedies by filing an EEOC charge. It notes that this alleged retaliation was not part of plaintiff's 2006 EEOC charge, and that plaintiff has filed no other charge regarding this incident. However, as plaintiff notes in her response, the Fifth Circuit has held that "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." *Gupta v. East Texas State Univ.*, 654 F.2d 411, 414 (5th Cir.1981).

As to the latter retaliation allegation, defendant argues that inasmuch as plaintiff was offered the non-tenure terminal contract before she filed her EEOC charge, plaintiff cannot prove that the "terminal contract" was offered "in retaliation" for filing her charge of discrimination and hence cannot establish a causal connection between the protected activity and the alleged adverse action. It submits that summary judgment is proper on this

---

**2.** The court notes that among other facts that are unclear and/or disputed in the record, there is conflicting evidence, *inter alia,* as to whether one's not being on a performance improvement plan was, in fact, a criterion for the salary adjustment and as to whether plaintiff was or should have been on a performance improvement plan. Further, it is not apparent to the court that the factors which defendant has identified as distinguishing the alleged comparators from plaintiff

were relevant to or had any bearing on the particular compensation decision that is challenged. There may have been respects in which their situations were not identical, but the court cannot conclude that those differences are necessarily relevant. *See Dileo v. Ashcroft,* 201 Fed.Appx. 190, 191 (5th Cir2006) (recognizing that "[t]he relevant aspects" of comparators' employment must be "nearly identical" to plaintiff's employment).

claim for the additional and/or alternative reason that it has a legitimate, non-retaliatory reason for offering plaintiff a terminal contract, namely, that the option between a terminal contract and removal from a tenure track position was dictated by the Mississippi Institutions of Higher Learning, in conjunction with Jackson State's policy as set forth in its Faculty Handbook.

In response to the motion as to this claim, plaintiff initially points out that she met with and sent a letter to JSU administrators complaining of alleged discrimination in March 2006, before the alleged retaliation. Contrary to defendant's intimation, this constitutes protected activity and hence can provide a foundation for the required causal connection. *See Tureaud v. Grambling State Univ.*, 294 Fed.Appx. 909, 914 (5th Cir.2008) ("An informal complaint to a supervisor regarding an unlawful employment practice may satisfy the opposition requirement of a Title VII retaliation claim.").

Plaintiff submits, moreover, that she has presented sufficient evidence to rebut defendant's proffered legitimate, nondiscriminatory explanation for its action. To the point, she claims there is ample evidence that JSU does not apply IHL's or its own policies consistently and evenhandedly, which evidence tends to show, and to create a genuine issue of material fact as to whether the real reason for JSU's challenged actions were retaliatory. The court agrees, and concludes therefore that summary judgment should be denied as to this claim.

Based on the foregoing, it is ordered that defendant's motion for summary judgment is granted as to plaintiff's § 1981 and equal protection claims and her state law claim for intentional infliction of emotional distress. It is ordered that the motion is denied as to her Title VII claims.

SO ORDERED.