# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 13, 2009          Decided February 16, 2010

No. 08-7115

HAROLD SCHULER,
APPELLANT

v.

PRICEWATERHOUSECOOPERS, LLP, ET AL.,
APPELLEES

Consolidated with 08-7116, 08-7120

Appeals from the United States District Court
for the District of Columbia
(No. 1:02-cv-00982-RJL)

*Richard A. Salzman* argued the cause for appellant C. Westbrook Murphy. *Joshua N. Rose* argued the cause for appellant Harold Schuler. With them on the briefs were *Douglas B. Huron* and *David L. Rose*. *Tammany M. Kramer* entered an appearance.

*Howard M. Shapiro* argued the cause for appellee. With him on the brief were *Juanita A. Crowley*, *Edward C. DuMont*, *Eric M. Nelson*, and *Stephen L. Sheinfeld*.

Before: GINSBURG and HENDERSON, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GINSBURG.

GINSBURG, *Circuit Judge*: The appellants, Harold Schuler and C. Westbrook Murphy, sued PricewaterhouseCoopers, LLP (PwC) alleging the firm refused to make them partners because of their ages, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, the District of Columbia Human Rights Act (DCHRA), D.C. Code § 2-1401.01 *et seq.*, and the New York Human Rights Law (NYHRL), N.Y. Exec. Law § 290 *et seq.* The district court (1) dismissed as untimely Schuler's claims under the ADEA for 1999 and 2000, (2) granted summary judgment for PwC on Schuler's claims under the ADEA and DCHRA for 2001 and on Murphy's claims under those laws for 2000, 2001, and 2004, and (3) dismissed all counts under the NYHRL for failure to state a claim.

We reverse the judgment of the district court insofar as it dismissed the claims brought under the NYHRL. In all other respects we affirm the judgment of the district court.

## I. Background

PwC is a partnership headquartered in New York that provides accounting, auditing, and other services to clients worldwide. It has more than 20,000 employees and more than 2,000 partners in the United States. The partnership agreement provides each partner shall retire upon reaching age 60 but in extraordinary circumstances a partner may delay retirement until he reaches age 62. The structure of the compensation and benefits package provided to a new partner

makes it financially undesirable for most employees over the age of 55 to become partners.

During the years relevant to this case, PwC was organized into several divisions, which were subdivided into practices, each comprising multiple practice groups. The firm hired Schuler in 1988, when he was 44 years old, and Murphy in 1989, when he was 49, to work in the Regulatory and Advisory Services (RAS) practice group in Washington, D.C. The RAS was part of the banking practice, which was in turn a part of the Audit and Business Advisory Services division. The RAS had four or five partners and about two-dozen other employees.

The process for selecting a new partner at PwC began at the practice group level. Each year the managing partner or a group of partners in each practice group could propose one or more employees to be considered for partner. Current partners were then asked to submit their reviews of that employee — called "soundings" — to an evaluation committee. An employee who received sufficiently numerous and favorable soundings proceeded through further stages of review and could be made a partner as of July of the following year.

In 1998 the RAS proposed Schuler, then 55, for partner. Only 12 partners submitted "soundings" about Schuler (six favorable, two unfavorable, and four reporting insufficient information), and he was not made a partner in 1999.

In 1999 the head of the RAS proposed another employee, then 37 years old, for partner. He also wanted to propose Schuler again but the head of the banking practice was not amenable because, as he later explained, he believed there had been "no significant change in circumstances or views" about Schuler since the previous year. Twenty-two partners submitted soundings about the other candidate (17 favorable, none unfavorable, and five reporting insufficient information) and he became a partner in 2000.

In 2001, a year in which the RAS proposed no one for partner, Schuler and Murphy each filed an administrative charge with the District of Columbia Office of Human Rights and cross-filed the charge with the Equal Employment Opportunity Commission (EEOC). Each alleged PwC had refused to consider him for promotion to partner because of his age — Schuler in 1999, 2000, and 2001 and Murphy in 2000 and 2001.

In 2002 Schuler and Murphy sued PwC, alleging, among other things, the firm had "denied [them] promotion to partner in 1999, 2000, and 2001 ... in violation of the ADEA, the DCHRA, and the [NYHRL]." PwC moved to dismiss Schuler's 1999 and 2000 and Murphy's 1999 claim under the ADEA because "the plaintiffs failed to file a timely administrative charge." *Murphy v. PricewaterhouseCoopers, LLP*, 357 F. Supp. 2d 230, 237 (D.D.C. 2004). The ADEA required each appellant, before suing, to have filed an administrative charge with the EEOC within 300 days of the alleged discriminatory action, *see* 29 U.S.C. § 626(d)(1), but Schuler filed his charge on June 29, 2001, more than 300 days after he did not become a partner in July 2000 (let alone July 1999), and Murphy filed his charge on March 14, 2001, more than 300 days after he did not become a partner in 1999. PwC also moved to dismiss all counts under the NYHRL for failure to state a claim upon which relief could be granted because they did not allege a discriminatory act had occurred in New York. Finally, PwC moved to dismiss all claims under the DCHRA on the ground that the "exercise of ... supplemental jurisdiction [was] not appropriate" because those claims "predominate[d] over the remaining federal claims." *Murphy*, 357 F. Supp. 2d. at 237, 245. The district court granted PwC's motion, to the extent relevant here, by dismissing as untimely Schuler's claims under the ADEA for 1999 and 2000 and dismissing all counts under the NYHRL for failure to state a claim upon which relief could be granted.

*See id.*, 357 F. Supp. 2d at 239–40, 244. The district court also dismissed as untimely Murphy's 1999 claim under the ADEA, which ruling Murphy has not appealed.

In 2003, the RAS proposed another employee for partner. He received 18 soundings (16 favorable, none unfavorable, and two reporting insufficient information) and became a partner in 2004, when he was 39.

In 2005 the appellants each filed a new lawsuit. Murphy alleged PwC did not make him a partner in 2004 because of his age, in violation of the ADEA and the DCHRA. The district court consolidated Murphy's new suit with the one he and Schuler had filed in 2002; it is these consolidated cases that are now before us on appeal. Schuler's 2005 lawsuit alleged "PwC has engaged in a pattern and practice of age discrimination in making decisions regarding assignments and promotions in violation" of the same two statutes, *see Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1369 (D.C. Cir. 2008) (quoting complaint); that suit is pending in the district court (No. Civ. 05cv2355 (RJL)).

That same year the district court denied PwC's motion for summary judgment on the appellants' remaining claims under the ADEA and DCHRA. In 2008, however, after the close of discovery PwC again moved for summary judgment, which the district court granted as to Murphy's claims under the ADEA and DCHRA for 2000, 2001, and 2004 and as to Schuler's claims under those statutes for 2001. The court concluded each had "failed to rebut PwC's legitimate, non-discriminatory explanations" for not making him a partner and had "not presented sufficient evidence to support a finding ... of intentional discrimination based on age." *Murphy v. PricewaterhouseCoopers, LLP*, 580 F. Supp. 2d 4, 12 (2008) (Murphy); *Murphy v. PricewaterhouseCoopers, LLP*, 580 F. Supp. 2d 16, 28 (2008) (Schuler). The court also dismissed Schuler's claims under the DCHRA for 1999 and 2000 as untimely because they "rel[ied] on discriminatory

acts occurring more than one year before the filing of Schuler's initial administrative complaint." *Murphy*, 580 F. Supp. 2d. at 25–26.

## II. Analysis

Schuler and Murphy challenge the district court's 2004 dismissal of their claims under the NYHRL and of Schuler's claims under the ADEA for 1999 and 2000. They also challenge respectively the court's grant of summary judgment in 2008 on Schuler's claims under the ADEA and DCHRA for 2001 and on Murphy's claims under those statutes for 2000, 2001, and 2004.

### A. Schuler's 1999 and 2000 claims under the ADEA

Schuler does not dispute that in 2004 the district court correctly dismissed as untimely his ADEA claims for 1999 and 2000. Schuler maintains, however, that the Lilly Ledbetter Fair Pay Act of 2009 (LLA), Pub. L. No. 111-2, 123 Stat. 5, which applies by its terms to claims of "discrimination in compensation" pending on or after May 28, 2007, § 6, 123 Stat. at 7, made his claims timely. Section 4 of the LLA provides, in relevant part:

> [A]n unlawful practice occurs, with respect to discrimination in compensation in violation of [the ADEA], when a discriminatory compensation decision or other practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, or when a person is affected by application of a discriminatory compensation decision or other practice ....

Misquoting the statute, Schuler argues the decision not to promote him was an "'other act' ... intertwined with a discriminatory compensation decision" because as a result of that decision he received significantly less remuneration than he would have done as a partner. In support of this position he refers us to the decisions of two district courts interpreting the LLA, *see Gentry v. Jackson State Univ.*, 610 F. Supp. 2d 564, 566 (S.D. Miss. 2009); *Rehman v. State Univ. of N.Y.*, 596 F. Supp. 2d 643, 651 (E.D.N.Y. 2009), and to the failure of two proposed amendments, one to the 2009 bill that became the LLA and one to an identical bill proposed in 2007, that would have deleted the phrase "other practice." Schuler contends the failure of those amendments "makes clear that Congress did *not* intend to limit the [LLA] only to 'compensation decisions.'"

For its part, PwC distinguishes between an employee's claim he was paid less than another employee for doing similar work and Schuler's claim that he should have been promoted to a higher paying position. The former is clearly discrimination in compensation and covered by the LLA; the latter, PwC argues, is not.

There can be no dispute that in order to benefit from the LLA Schuler must bring a claim involving "discrimination in compensation" and point to a "discriminatory compensation decision or other practice." The question is whether he did so by claiming PwC did not make him a partner because of his age. The answer is that he did neither.

As PwC's distinction implies, in employment law the phrase "discrimination in compensation" means paying different wages or providing different benefits to similarly situated employees, not promoting one employee but not another to a more remunerative position. *See Anderson v. Zubieta*, 180 F.3d 329, 338 (D.C. Cir. 1999) (plaintiff alleging "wage discrimination" under Title VII must show he was "performing work substantially equal to that of …

employees ... compensated at higher rates" (internal quotation marks omitted)); *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008) (prima facie case of "discrimination in compensation" under Title VII involves showing plaintiff "was paid less than a non-member [of the protected class] for work requiring substantially the same responsibility"); *MacPherson v. Univ. of Montevallo*, 922 F.2d 766, 774 (11th Cir. 1991) (proof of "discrimination in compensation" under ADEA requires showing "similarly situated persons outside the protected age group received higher wages"). In contrast, a discriminatory failure to promote is actionable regardless whether it affects an employee's compensation. *See, e.g.*, *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1277–78 (10th Cir. 2005) (prima facie case of "failure-to-promote" under ADEA requires showing only that qualified plaintiff was rejected and "position was filled by someone outside the protected class"); *Cones v. Shalala*, 199 F.3d 512, 514, 516 (D.C. Cir. 2000) (prima facie case of "deni[al] [of] a promotion" under Title VII requires showing only that qualified plaintiff was rejected and "either someone not of his protected class filled the position or the position remained vacant and the employer continued to seek applicants"). In context, therefore, we do not understand "compensation decision or other practice" to refer to the decision to promote one employee but not another to a more remunerative position.

Our interpretation of the LLA is fully consistent with the patent intent of the Congress to overrule the Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), *see* § 2, 123 Stat. at 5. The plaintiff there claimed she was the victim of discrimination because, based upon allegedly discriminatory performance reviews, she "was being paid significantly less than any of her male colleagues," 550 U.S. at 622, and the Court repeatedly referred to her claim as one of "pay discrimination," *id.* at 622–23, 638–42.

The Court held Ledbetter's claim was untimely because she filed an administrative charge too long after the decisions about her compensation were made. *Id.* at 627. In the LLA the Congress characterized *Ledbetter* as having "significantly impair[ed] ... protections against discrimination in compensation" and "ignore[d] the reality of wage discrimination." § 2, 123 Stat. at 5. That the Congress drafted and passed the LLA specifically in order to overturn *Ledbetter* strongly suggests the statute is directed at the specific type of discrimination involved in that case and not to other unspecified types of discrimination in employment.

Nor does our interpretation of the phrase "discriminatory compensation decision or other practice" read "other practice" out of the statute. We need look no further than *Ledbetter* itself for an example of a discriminatory "other practice," *viz.*, giving an employee a poor performance evaluation based upon her sex (or any other unlawful criterion) and then using the evaluation to determine her rate of pay. *See* 550 U.S. at 622.

For these reasons, we conclude the decision whether to promote an employee to a higher paying position is not a "compensation decision or other practice" within the meaning of that phrase in the LLA and Schuler's failure-to-promote claim is not a claim of "discrimination in compensation." The LLA therefore does not revive his claims under the ADEA.[*]

---

[*] In his Reply Brief (at 18–19) Schuler also argues his 2000 ADEA claim is timely because he can "piggyback" upon Murphy's timely administrative charge filed in 2001. In his opening brief, however, Schuler refers to piggybacking only in a footnote, App. Br. 54 n.17, in which he makes no affirmative argument that he should be allowed to piggyback, contending only the reasons the district court gave for denying piggybacking were wrong. Because he first makes his affirmative argument in his reply brief, we do not consider it. *See, e.g.*, *Students Against Genocide v. Dep't of State*,

*B. Other Claims under the ADEA and the DCHRA*

We review *de novo* the district court's grant of summary judgment on Schuler's 2001 and on Murphy's 2000, 2001, and 2004 claims under the ADEA and DCHRA. *See Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925, 929 (2008). In order to prevail at summary judgment, the plaintiff in an ADEA case must show that a reasonable jury could find his age was the "but-for" cause of the employment action he challenges. *See Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2352 (2009); *see also Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008) (plaintiff must "produce[] evidence sufficient for a reasonable jury to find" non-discriminatory reason offered by employer was "not the actual reason" for challenged action and "employer intentionally discriminated against [plaintiff] based on his ... age" (internal quotation marks omitted)) (citing *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008)).

The courts of the District of Columbia "look[] to federal court decisions interpreting the [ADEA] when evaluating age discrimination claims under the DCHRA." *Washington Convention Ctr. Auth. v. Johnson*, 953 A.2d 1064, 1073 n.7 (D.C. 2008). Under current D.C. precedent, which predates the Supreme Court's recent decision in *Gross*, a claimant under the DCHRA, if he is to survive summary judgment, must show a reasonable jury could find his age "had a determinative influence on the" challenged employment

---

257 F.3d 828, 835 (D.C. Cir. 2001) ("we have repeatedly held that an argument first made in a reply brief ordinarily comes too late for our consideration"); *see also United States v. Whren*, 111 F.3d 956, 958 (D.C. Cir. 1997) ("absent extraordinary circumstances ... we do not entertain an argument raised for the first time in ... a footnote").

action. *Id.* at 1073 (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 141 (2000)) (internal quotation marks omitted); *see also Hamilton v. Howard Univ.*, 960 A.2d 308, 314 (D.C. 2008) (stating issue as whether age "actually motivated the employer's decision"). We need not determine whether D.C. case law prescribes a meaningfully different standard from the one in *Gross* because, based upon the evidence in this case, no reasonable jury could believe either appellant's age "had a determinative influence" upon PwC's failure to promote him or was the "but-for" cause of that decision.

As for Schuler, PwC maintains it did not make him a partner in 2001 because there was no business case for doing so. The record shows business conditions had deteriorated: In 2000 and in 2001 the RAS nominated no one for partner, and Schuler himself acknowledged there was "slow economic activity and not a lot ... of regulatory action" in "2000-2001." Schuler presents no evidence rebutting that explanation. He points to a statement made by the head of the RAS in September 1999 when proposing him for partnership — the "RAS is booming and I need full time partners" — but it is anachronistic and therefore unavailing.

Murphy likewise fails to provide any basis upon which a reasonable jury could disbelieve PwC's primary explanation for not making him a partner, *viz.*, that employees were rated on a scale of "1" to "4," with "1" being the highest; the RAS proposed for partnership only employees with performance ratings of "1" in each of the three prior years; and Murphy was not promoted because he did not meet that requirement. The record documents the existence and exercise of such a policy: Every candidate the RAS proposed for partner in the years for which there are data in the record (1999 through 2004) had a performance rating of "1" in each of the three years before he was proposed, *see Murphy v. PricewaterhouseCoopers, LLC*, 580 F. Supp. 2d 4, 13 n.15

(D.D.C. 2008) (noting this fact), and Murphy did not have three years of "1"s immediately before any year in which he claims he should have been made a partner — 2000, 2001, or 2004. Murphy does not contest these facts.

Murphy does, however, maintain a reasonable jury could find he received relatively low performance ratings only because those rating him believed that, in view of his age, PwC would never make him a partner. As evidence of a general policy not to make older employees partners, Murphy points to the provision for mandatory retirement in the partnership agreement, to the modest number of employees who were made partner after turning 50 (between 1998 and 2005 only 61 (3.6%) of new partners were 50 or older; six (0.4%) were aged 55-59), and to comments three PwC executives made about the value of bringing in younger partners. No reasonable jury, however, could conclude from this general evidence that Murphy's ratings in particular were the result of his age and not of his performance; the record shows in the RAS alone at least two other employees over the age of 50 each received ratings of "1" in multiple years. Indeed, his co-plaintiff Schuler had received ratings of "1" for each of the three years prior to his 1998 nomination for partner, when he was 54.[*]

Finally Murphy asks us to provide "guidance" as to whether the provision in the partnership agreement making retirement mandatory at age 60 or 62 violates the ADEA because, he says, the issue "is likely to rise [sic] again in this litigation." He contends most partners at PwC are more like employees than owners of the firm and are therefore entitled to the protection of the statute, which prohibits any mandatory retirement age for employees over 40. *See* 29 U.S.C. § 623(a)(2) (unlawful to "limit" an employee in "any way

---

[*] The appellants make other arguments, but they do not warrant treatment in a published opinion.

which would deprive [him] of employment opportunities" or "adversely affect his status as an employee because of [his] age"); *see also Clackamas Gastroenterology Assocs., PC v. Wells*, 538 U.S. 440, 445–46 (2003) (employees, but not owners, of firm protected by antidiscrimination laws).

Be that as it may, the district court correctly observed, in declining to pass upon the issue, that nothing in the present case turns upon it. *See Murphy*, 580 F. Supp. 2d at 16 n.22. Murphy seems to suggest the legality of the retirement provision affects whether he should prevail here, but it does not: Even if the partnership agreement violated the ADEA, that violation would have no bearing upon whether a reasonable jury could disbelieve PwC's explanation for not making Murphy a partner. Because a federal court does not have jurisdiction to issue an advisory opinion, *see, e.g.*, *Flast v. Cohen*, 392 U.S. 83, 95 (1968) ("no justiciable controversy is presented ... when the parties are asking for an advisory opinion"), we must decline Murphy's request to consider the issue.

*C. Claims under the NYHRL*

The district court dismissed all counts under the NYHRL for failure to state a claim upon which relief could be granted. *Murphy v. PricewaterhouseCoopers, LLP*, 357 F. Supp. 2d 230, 244 (2004). Reviewing the issue *de novo*, *Covad Commc'ns Co. v. Bell Atl. Corp.*, 398 F.3d 666, 670–71 (D.C. Cir. 2005), we conclude the district court erred.

The district court reasoned that in order to assert a claim under the NYHRL a non-New-York resident such as Schuler or Murphy "must allege that the actual impact of the discriminatory act was felt in New York," *Murphy*, 357 F. Supp. 2d at 244, which the appellants have not done. In an intervening decision in a related case we held it is enough that a discriminatory act occurred in New York. *Schuler v.*

*PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1378 (2008). Thereafter the district court declined to reinstate the appellants' claims because it found "no evidence ... an act of discrimination occurred in New York." *Murphy v. PricewaterhouseCoopers, LLP*, 580 F. Supp. 2d 16, 22 n.17 (2008).

The relevant question is whether the appellants' complaint alleges facts that, if true, would establish a violation of the NYHRL. *See* Fed. R. Civ. P. 12(b)(6). The appellants allege PwC did not promote them because it has a policy of promoting only younger employees. Both that policy and a decision pursuant thereto, if adopted in New York, would violate § 296 of the NYHRL.

In *Schuler* we held that, in view of his "assertion that the company is headquartered in New York," Schuler was entitled to the "reasonable inference" the alleged policy was adopted in New York. 514 F.3d at 1377. Based upon our reasoning in that case the appellants argue they are entitled to the reasonable inference the discrimination alleged in this case occurred in New York.[*] PwC says *Schuler* "does not control" because it addressed only PwC's adoption and maintenance of a discriminatory policy, not the "discrete decision[] not to admit [Schuler] to partnership." To which we say: Pettifoggery and piffle!

Because the appellants in this case allege PwC is headquartered in New York, Compl. ¶ 4, both appellants are entitled to the reasonable inference the decisions not to promote them occurred in New York. The district court's rationale for dismissing the claims under the NYHRL both as to Schuler and as to Murphy was therefore incorrect.

---

[*] Although the appellants' briefs focus in this respect upon Schuler, their opening brief makes clear both "[p]laintiffs … appeal … the district court's order … dismissing their claims under the [NYHRL]," and our analysis is equally applicable to both.

15

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court with respect to all claims brought under the ADEA or the DCHRA. We reverse the judgment of the district court with respect to the claims brought under the NYHRL, which claims we remand to the district court for further proceedings.

We recognize our decision leaves only state-law claims pending in the district court. "Even if only state-law claims remain[] after resolution of the federal question," however, a district court has "discretion ... to retain jurisdiction." *Osborn v. Haley*, 549 U.S. 225, 245 (2007). And "once it has invested time and resources" in a case, "[c]onsiderations of judicial economy, convenience and fairness to litigants ... make it reasonable and proper for a federal court to proceed to final judgment" upon the state-law claims. *Id.* (internal citation and quotation marks omitted).

*So ordered.*