# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 18, 2010       Decided June 1, 2010

No. 09-5167

MELVIN PORTER,
APPELLANT

v.

RAJIV SHAH,
ADMINISTRATOR, USAID,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:04-cv-01440-RBW)

*Anne E. Langford* argued the cause for the appellant. *David J. Cynamon*, *Thomas G. Allen*, *Susan E. Huhta* and *Gerard M. Babendreier*, were on brief.

*Michelle Lo*, Assistant United States Attorney, argued the cause for the appellee. *R. Craig Lawrence*, Assistant United States Attorney, was on brief.

Before: HENDERSON, ROGERS and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LeCRAFT HENDERSON, *Circuit Judge*: Melvin Porter appeals the district court's grant of summary judgment to the defendant on his 14-count complaint alleging various acts of retaliation and race and sex discrimination by his employer, the United States Agency for International Development (USAID). *Porter v. Fulgham*, 601 F. Supp. 2d 205 (D.D.C. 2009) (*Porter II* Mem. Op.). We affirm the court's judgment on Counts I-IV because we agree that Porter failed to rebut USAID's legitimate reasons for not promoting him to two positions, Counts VIII and X based on *res judicata* and Count XII because the alleged retaliatory performance assessment did not constitute a materially adverse employment action. We reverse the district court's judgment on Counts V and VI because a reasonable juror could conclude that Porter was substantially more qualified for the position of Deputy Chief in the Personnel Operations Division than the person selected to fill it and on Count XIV because the unfavorable interim performance assessment of Porter was a materially adverse employment action.

**I.**

Porter, a 59-year-old black male, began working for the United States government in 1975 at the Bureau of Standards and was hired by USAID in 1985 to work in its Office of Human Resources at General Schedule (GS) pay grade level 13 (GS-13). In 1987, he was promoted to GS-14, where he remained for the duration of his USAID employment despite repeatedly applying for promotion to GS-15 positions.

From 1988 to 1995, Porter filed a series of equal employment opportunity complaints alleging sex- and race-based discrimination, as well as retaliation for filing the discrimination complaints and a lawsuit. Porter settled the complaints in 1992 and in 1995, after which USAID transferred him to the Bureau for Policy and Program Coordination where he worked as a GS-14 Administrative Officer until September 2007.

In August 2000, Porter filed an action in the district court alleging race and gender discrimination and retaliation. *Porter v. U.S. Agency for Int'l Dev.*, C.A. No. 00-1954 (D.D.C. filed Aug. 11, 2000) (*Porter I*). In June 2002, a jury returned a verdict in Porter's favor on two of six counts of retaliatory non-promotion, awarding him $30,000 in damages. In its judgment on the verdict, the district court enjoined USAID "from retaliating against [Porter] for his protected activity under Title VII." Judgment at 2, *Porter I* (D.D.C. Feb. 3, 2003). In June 2003, Porter moved for an order to show cause why USAID should not be held in contempt for violating the injunction, alleging that his immediate supervisor, Barbara Turner, had retaliated against him by (1) denying him a 2001 bonus despite his "Excellent" performance assessment and (2) assigning him a "Needs Improvement" assessment in 2002. Mot. of Pl. Porter for an Order to Show Cause at 1, *Porter I* (D.D.C. June 24, 2003). The district court issued a show cause order, directing USAID to explain why it denied the 2001 bonus and issued the negative assessment. The court subsequently discharged the show cause order, finding "no evidence of contempt in the record" as Porter was not entitled to either a performance award in 2001 or an "Excellent" performance rating in 2002. Memorandum Order, at 2, *Porter I* (D.D.C. Nov. 25, 2003) (Show Cause Discharge Order).

Porter continued to apply for GS-15 positions but without success. On August 24, 2004, he filed the instant action against USAID, asserting 14 counts, 10 of which are at issue on appeal: (1) discriminatory denial of promotion to the position of GS-15 Supervisory Labor Relations Specialist (Count I); (2) retaliatory denial of promotion to the same position (Count II); (3) discriminatory denial of promotion to the position of GS-15 Administrative Officer in the Global Bureau (Count III); (4) retaliatory denial of promotion to the same position (Count IV); (5) discriminatory denial of promotion to the position of GS-15 Deputy Chief in the Personnel Operations Division (Count V);

(6) retaliatory denial of promotion to the same position (Count VI); (7) retaliatory denial of a performance bonus in 2001 (Count VIII); (8) retaliatory issuance of an adverse performance assessment for 2002 (Count X); (9) retaliatory issuance of an adverse interim performance assessment in July 2003 (Count XII); and (10) retaliatory issuance of an adverse interim performance assessment in September 2004 (Count XIV).[1]

USAID moved for summary judgment, which the district court granted on all counts in an opinion and order filed March 9, 2009. *See Porter II* Mem. Op., 601 F. Supp. 2d at 238 & n.21. First, the court concluded that Counts VIII and X were *res judicata* because "the plaintiff received the equivalent of a final judgment on the merits of his retaliation claims concerning the 2001 bonus and his 2002 performance review" in *Porter I*'s Show Cause Discharge Order. 601 F. Supp. 2d at 217.

Second, the court analyzed the claims for discriminatory or retaliatory non-promotion in Counts I-VI under the familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the initial burden rests on the plaintiff to establish a prima facie case of discrimination or retaliation. *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 576-77 (D.C. Cir. 2010). The burden then shifts to the employer to produce a legitimate, nondiscriminatory or nonretaliatory reason for its action. *Id.* After the employer produces a legitimate justification for its action, the *McDonnell Douglas* framework disappears and the court determines whether a reasonable jury could infer discrimination or retaliation based on all of the evidence, including " 'not only the prima facie case but also the evidence the plaintiff offers to attack the employer's proffered explanation for its action and

---

[1]As the district court noted, Porter did not contest USAID's summary judgment motion as to Counts VII, IX, XI, and XIII. *Porter II* Mem. Op., 601 F. Supp. 2d at 212 n.4.

other evidence of retaliation.' " *Id.* at 577 (quoting *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009)). For each of Porter's six counts of non-promotion, the district court concluded that, whether or not Porter had made out a prima facie case, he failed to show USAID's legitimate nondiscriminatory or nonretaliatory reason for not selecting him was pretextual.[2]

Finally, on Counts XII and XIV, alleging retaliatory adverse performance assessments, the court concluded that neither assessment qualified as a material "adverse action" because neither was "the type of personnel action that would objectively deter a reasonable employee from making a claim of discrimination." 601 F. Supp. 2d at 236 (citing *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)).

Porter filed a timely notice of appeal on May 5, 2009.

## II.

We review a grant of summary judgment *de novo*. *Miller v. Hersman*, 594 F.3d 8, 10 (D.C. Cir. 2010). "Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.' " *Id.* (quoting Fed. R. Civ. P. 56(c)) (other internal quotation omitted). "In assessing whether a genuine issue exists, we 'view the evidence in the light most favorable to the nonmoving party.' " *Id.* (quoting *Quigley*, 569 F.3d at 453). Applying this standard, we address each of the contested counts.

---

[2]Because USAID asserted a legitimate, nondiscriminatory or nonretaliatory reason for each of the non-promotions, whether Porter "actually made out a prima facie case is . . . irrelevant." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494-95 (D.C. Cir. 2008); *see also Jones*, 557 F.3d at 678.

### *A. Counts VIII and X*

The district court held that Counts VIII and X—alleging the retaliatory denial of a performance bonus in 2001 and the receipt of a "needs improvement" performance assessment in 2002—constituted *res judicata* because both claims had been adjudicated in *Porter I*'s Show Cause Discharge Order, which rejected Porter's claim that USAID violated the non-retaliation injunction as it found "no evidence of contempt in the record." Show Cause Discharge Order at 2. We agree with the district court that the Show Cause Discharge Order rendered the two claims *res judicata*.

" 'Under the doctrine of res judicata, or claim preclusion, a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction.' " *Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009) (quoting *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006)). Counts VIII and X meet all of these requirements. Porter's failure to secure a bonus and his adverse rating were both litigated in the post-judgment proceeding in *Porter I* by the same parties (Porter and USAID) and the district court issued a final decision on the claims' merits, finding no retaliation because Porter was not entitled to a bonus or an "Excellent" rating. As the district court below explained:

> The record in *Porter I* reflects that the parties fully briefed and provided evidentiary support on the issue of whether those acts constituted retaliation, and a member of this Court weighed the factual evidence proffered and rendered a judgment on the merits of those matters. The plaintiff having been afforded the opportunity to litigate his retaliations claims as to the 2001 bonus and 2002 performance evaluation on the

> merits in his 2000 lawsuit against the defendant, and having received the equivalent of a final judgment on the merits rendered by a court of competent jurisdiction on these same claims he seeks to pursue in this case, the Court finds that Counts VIII and X are barred by the doctrine of res judicata.

601 F. Supp. 2d at 217.

Porter asserts *res judicata* should not apply because he was not given a "full and fair opportunity" to litigate the merits. *See Nixon v. United States*, 978 F.2d 1269, 1298 (D.C. Cir. 1992) (Henderson, J., concurring) ("To apply *res judicata*, the litigants or their privies must have had a full and fair opportunity to raise the claim in an earlier proceeding."). In particular, Porter claims he should have been afforded discovery and an evidentiary hearing. But Porter was not entitled to discovery or an evidentiary hearing as a matter of right; whether to afford him either one was a matter within the trial court's discretion. *See Ned Chartering & Trading, Inc. v. Republic of Pakistan*, 294 F.3d 148, 151 n.1 (D.C. Cir 2002) ("decision to hold an oral hearing is committed to 'the discretion of the court' " (quoting then D.D.C. Local Rule 7.1(f) (now D.C.D. LCvR 78.1)); *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1040 (D.C. Cir. 2008) (court reviews denial of discovery for abuse of discretion). He had the opportunity to—and did—submit extensive documentary evidence. If he felt the court abused its discretion in failing to afford him discovery or a hearing, he could have appealed the court's discharge of the show cause order, asserting abuse of discretion. Because he forwent the opportunity to appeal, the two claims decided against him in *Porter I* are *res judicata* here.[3]

---

[3]Relying on the Second Circuit's decision in *Marvel Characters, Inc. v. Simon*, 310 F.3d 280 (2d Cir. 2002), Porter contends *res judicata* does not apply because the district court "could not have

### *B. Counts I-VI*

Counts I, III and V all allege the discriminatory denial of promotion to distinct GS-15 positions, while Counts II, IV and VI allege retaliatory denial of promotion to the same three positions. Because USAID offered a legitimate reason for denying each promotion, the "central inquiry" for the court is "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the

---

awarded damages in the post-judgment contempt proceedings." Reply Br. at 8; *see Marvel*, 310 F.3d at 287 ("[R]es judicata does not bar subsequent litigation when the court in the prior action could not have awarded the relief requested in the new action."). While Porter is technically correct that the court could not have awarded "damages" in the civil contempt proceeding, it could have provided equivalent relief " 'to compensate [Porter] for losses sustained,' through a fine payable to [him]." *United States v. Waksberg*, 112 F.3d 1225, 1226 (D.C. Cir. 1997) (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)); *see, e.g.*, *Equal Employment Opportunity Comm'n v. Local* 638, 81 F.3d 1162, 1177 (2d Cir. 1996) (reversing excessive civil contempt fine against union for violating court's affirmative action order and remanding to recalculate remedy to compensate with back pay only workers who actually suffered discrimination). Moreover, that the burden of proof may be heavier in a civil contempt proceeding than in a trial proceeding, *see Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995), is of no moment in this case because the district court made clear that Porter had not borne even the lightest of burdens. *See* Show Cause Discharge Order at 2 (finding "*no* evidence of contempt") (emphasis added). Porter also argues USAID is "estopped" from asserting *res judicata* because it adopted an inconsistent position in *Porter I*. Because Porter raises the argument for the first time in his reply brief, we do not consider it. *Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 376 (D.C. Cir. 2010).

employer intentionally discriminated against the plaintiff on a prohibited basis." *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226-27 (D.C. Cir. 2008). The district court concluded there was insufficient evidence to infer the asserted reasons were pretextual and accordingly concluded that summary judgment was appropriate. On *de novo* review, we reach the same conclusion as to Counts I-IV but not as to Counts V and VI.

Counts I and II allege that in August 2000, shortly after filing the complaint in *Porter I*, Porter applied for the position of GS-15 Supervisory Labor Relations Specialist but was denied the promotion because of his race and in retaliation for his "prior protected activity." 2d Am. Compl. ¶¶ 15, 29-33, *Porter II* (Oct. 12, 2005). The district court found unrebutted USAID's legitimate reasons for passing over Porter for another candidate who " 'had practiced law for approximately ten years prior to his selection for the [position],' held a law degree from a prestigious law school, and had experience performing the legally related functions required of the position," pointing out that Porter "did not have a legal degree, had drafted only one appeal, never prepared a final agency decision during his career or wrote an agency-level Foreign Service decision, and had never represented the Agency before the Foreign Service Grievance Board, all tasks which he would be required to do if he had been selected for the position." *Porter II* Mem. Op., 601 F.3d at 220-21 (quoting Mem. of Points and Authorities in Supp. of Def.'s Mot. for Summ. J., *Porter II*) (internal record citations omitted; alteration in original).

Porter argues, as he did below, that the proffered legitimate reasons are rebutted by the facts that (1) he was better qualified than the candidate selected and (2) the selecting officer for the position, Marilyn Marton, who had been found to have retaliated against Porter in *Porter I*, "overhauled" the position's "crediting plan" which set out the criteria for grading applicants.

Appellant's Br. at 27. Neither assertion, however, precludes summary judgment on Counts I and II.

First, the record indicates that Porter was not "substantially more qualified" to perform the duties listed in the vacancy announcement than the successful candidate, H. David Kotz, a lawyer with 10 years' experience in labor and employee relations.[4] *See Lathram v. Snow*, 336 F.3d 1085, 1092 (D.C. Cir. 2003). Porter plainly lacked the "stark superiority of credentials" over Kotz that can give rise to an inference of pretext. *Stewart v. Ashcroft*, 352 F.3d 422, 429 (D.C. Cir. 2003); *see also Adeyemi*, 525 F.3d at 1227 ("The qualifications gap must be great enough to be inherently indicative of discrimination.") (internal quotation omitted). Second, there is nothing about the alleged "overhaul" of the crediting plan that is, by itself, particularly indicative of discrimination or pretext—it affected all applicants equally and nothing in its text or about its circumstances ties it to discrimination or retaliation

---

[4]The vacancy described the incumbent as the "senior advisor relating to the Agency's labor management obligations" with the responsibility to render "final Agency decisions" on grievances and to represent USAID before the Federal Labor Relations Authority, the Foreign Service Labor Relations Board, the Federal Service Impasse Panel and the Foreign Service Impasse Disputes Panel. USAID Vacancy Announcement for "Supervisory Labor Relations Specialist," No. 00-2073-MW at 1-2 (opened Aug. 29, 2000) (ex. 6 to Def.'s' Statement of Material Facts as to Which There is No Genuine Dispute, *Porter II* (filed July 21, 2006) (Def.'s Statement)). Kotz's resume revealed he had represented USAID before the Foreign Service Grievance Board, the Merit Systems Protection Board, the Equal Employment Opportunity Commission and the General Accounting Office, had drafted and reviewed "numerous grievance decisions" and had engaged in "numerous discussions and negotiations with union officials." Resume of Harold David Kotz at 2. Porter had been involved in a single contract negotiation, written only one appeal and drafted no final agency decision. Def.'s Statement at 5.

against Porter specifically. *Cf. Adeyemi*, 525 F.3d at 1228-29 (re-advertising of position to seek level 12 applicants to fill two remaining level 11 openings—after hiring five level 11s—not indicative of discrimination because *all* level 11 non-incumbents were similarly disadvantaged). And Porter has not shown that changing the job criteria was "so irregular or inconsistent with [USAID's] established policies as to make its hiring explanation unworthy of belief." *Simms v. Oklahoma ex rel Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999). Nor can a finding of pretext rest on the bare fact of Marton's history with Porter. *See id.* (alleged past retaliatory act by two job interviewers was "relevant" but "not enough to impute sinister motivations to them during the . . . selection process").

We also uphold the grant of summary judgment on Counts III and IV, which allege that in May 2001 USAID decided not to advertise a vacancy for a GS-15 Administrative Officer in the Global Bureau and instead laterally transferred a white male to the position in order to prevent Porter from securing it, discriminating against him on account of his race and retaliating for his agency complaints and his successful litigation of *Porter I.* 2d Am. Compl. ¶¶ 18-20, 34-38. The district court again found unrebutted USAID's legitimate reason for choosing the selectee (and for electing not to open the position to competition)—namely, "the selectee's absolutely outstanding credentials, including a long and distinguished career in the personnel field, his publications, and college-level teaching experience." *Porter II* Mem. Op., 601 F. Supp. 2d at 222 (internal record quotations omitted). Porter does not challenge the selectee's qualifications but instead asserts as "evidence" of pretext that Linda Lion, who, like Marton, had been involved in the retaliation found by the *Porter I* jury and had testified at the *Porter I* trial, made the non-competitive lateral transfer decision while knowing Porter was the "most competitive candidate for the position" within the department and that he would apply for

the position. Appellant's Br. at 31. From all of this, Porter claims, a jury could infer that Lion made the decision for the purpose of discriminating and retaliating against him. Such "speculations and allegations . . . are insufficient to create a genuine issue of fact regarding [an employer's] articulated reasons for [its decisions] and avoid summary judgment." *Brown v. Brody*, 199 F.3d 446, 458-59 (D.C. Cir. 1999) (internal quotation omitted). Lion's involvement in both *Porter I* and *Porter II* is, like Marton's, insufficient by itself to establish pretext. Further, Lion was authorized under USAID procedures to fill the vacancy through a lateral transfer without a competitive procedure, *see Porter II* Mem. Op., 601 F. Supp. 2d at 223 & n.11—so that the lateral transfer was neither "irregular" nor "inconsistent with [USAID's] established policies," *Simms*, 165 F.3d at 1330. On this record, there was no basis for the district court (nor is there for us) to reject USAID's legitimate reason for the lateral transfer. Summary judgment was therefore appropriate.[5]

By contrast, summary judgment was not appropriate on Counts V and VI, which charged USAID with gender discrimination and retaliation in not promoting Porter in November 2001 to the open position of Deputy Chief in the Personnel Operations Division. The district court again accepted USAID's proffered reason for not selecting Porter, namely, that

---

[5]Although we find certain facts Porter cites insufficient to rebut USAID's legitimate reasons for not promoting Porter to the position of Supervisory Labor Relations Specialist or Global Bureau Administrative Officer—such as the involvement of the same decision makers who were found liable in *Porter I*, the "overhaul" of the job criteria and the decision to bring in a lateral transfer—nonetheless, on remand, these facts may be considered as evidence in deciding the remanded counts. *See Simms*, 165 F.3d at 1330 (allegation of past retaliation by superior is "relevant" to allegation of wrongful non-promotion).

"the female selectee had over 34 years of experience in human resource management, had been serving in a similar position to that of Deputy Chief and had far more supervisory experience than that of the plaintiff, even having supervised the plaintiff for some time." *Porter II* Mem. Op., 601 F. Supp. 2d at 224. The record, however, casts doubt on USAID's asserted reason for rejecting Porter.

The job description of the Deputy Chief position stated that a "B.A./B.S. in personnel management, business administration or international business management is required[,] [and a] M.A./M.S. is desired." 601 F. Supp. 2d at 225 (quoting Def.'s Statement of Material Facts as to Which There is No Genuine Dispute, ex. 32 at 6, *Porter I* (filed July 21, 2006)). In lieu of the "required" bachelor's degree in business, Porter, whose bachelor's degree is in political science, holds a second master's degree in business (he has a master of science in business and a master's degree in business administration); the selectee, by contrast, was a high school graduate with no college degree at all. Given that the two candidates' qualifications were otherwise close, as the district court acknowledged, 601 F. Supp. 2d at 225, the substantial educational discrepancy could lead a reasonable jury to conclude that Porter was "markedly more qualified" than was the selectee, "thus throwing into doubt the reason given for his rejection." *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1299 (D.C. Cir. 1998) (en banc). Accordingly, USAID was not entitled to summary judgment on Counts V and VI.

### C. Performance Assessments

Finally, we address the grant of summary judgment on Counts XII and XIV, alleging that Porter received a retaliatory adverse interim performance assessment in, respectively, July 2003 and September 2004. The district court granted summary judgment on each count on the ground that the evaluations were

not material adverse actions so as to constitute actionable retaliation. We agree as to Count XII but not Count XIV.

"In order to prevail upon a claim of unlawful retaliation, an employee must show she engaged in protected activity, as a consequence of which her employer took a materially adverse action against her." *Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009) (internal quotation omitted). "A materially adverse action is one that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.' " *Id*. (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)) (other internal quotation omitted). The 2003 interim assessment falls short of this standard.

On July 7, 2003, in a face-to-face meeting, Turner assessed Porter as "borderline unacceptable" and criticized his performance of various tasks. The assessment was delivered orally, with no written record placed in Porter's personnel files, and it was superseded by his year-end annual review. Decl. of Melvin C. Porter ¶¶ 58-59 (dated Sept. 15, 2006) (Porter Decl.) (ex. 1 to Pl.'s Rule 7.1(h) Statement in Resp. to Def.'s Statement of Undisputed Material Facts (filed Sept. 19, 2006) (Pl.'s Statement)); *see* Automated Directives System (ADS) 462.3.1.1, 462.3.6.[6] Thus, the interim assessment did not affect Porter's " 'position, grade level, salary, or promotion opportunities' " and was therefore not a materially adverse action. *Taylor v. Solis*, 571 F.3d at 1321 (quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008)).

Count XIV presents a different situation. In it, Porter alleges Turner retaliated against him again in the 2004 interim assessment. On September 1, 2004, Turner issued him a

_____

[6]At year's end, Turner assessed Porter as "Needs Improvement," an assessment later overturned by an "Appraisal Committee." Porter Decl. ¶¶ 58-59.

"Notification of Unacceptable Performance"—a rating that "informs an employee that his or her performance teetered on the lowest rating possible for an Agency employee." Porter Decl. ¶ 62; *see* 2d Am. Compl. ¶¶ 28, 63. In contrast to the 2003 interim assessment, the 2004 evaluation was in writing and was placed in Porter's personnel file notwithstanding USAID's policy that "[n]ormally, interim evaluations are retained in the operating unit and not submitted to the Office of Human Resources for filing in an employee's Official Evaluation File." ADS 462.3.6.1; *see* Porter Decl. ¶ 63. Moreover, it was accompanied by a 120-day "Performance Improvement Plan" (PIP), which "outline[d] the required activities and level of performance" needed to upgrade his evaluation to "needs improvement." Memo. from Barbara N. Turner to Melvin Porter at 1 (dated Sept. 1, 2004) (Pl.'s Statement ex. 56); *see* Porter Decl. ¶ 61. Under Civil Service regulations and USAID policies, the rating and the PIP could expose him to removal, reduction in grade, withholding of within grade increase or reassignment. *See* 5 C.F.R. § 432.104; ADS 462.3.3.1. Given their serious consequences affecting Porter's " 'position, grade level, salary, or promotion opportunities,' " the negative assessment together with the PIP constituted a material adverse action. *Taylor v. Solis*, 571 F.3d at 1321 (quoting *Baloch*, 550 F.3d at 1199).

For the foregoing reasons, we affirm the district court's summary judgment on Counts I-IV, VIII, X and XII and reverse its judgment on Counts V, VI and XIV. We remand for further action consistent with this opinion.

*So ordered.*